*Ricketts,* for Appellee.

---

## H. LEE'S EXRS. et al. *v.* R. GRAHAM'S EXRS. et al.

**Revivor of Suit — Decedent Heirs.**
> The provisions of Section 569, Civil Code, applies to executors, administrators and such representatives as are personal to the decedant heirs, and does not apply to heirs who represent their own interest only, title having descended to them; the court knows of no section of the Code or provision of law prohibiting a revivor of a suit for realty against the heirs who have become invested with the title until the suit shall be barred by lapse of time, or an order abating the suit shall be entered by the court. .

**Partnership — Purchase of Lands, by One as Joint Ownership — Parol Agreement.**
> A purchase of lands by one party under a parol agreement that it was for a partnership transaction, though the deed be made to one party only, will be held, in a court of equity, to inure to the benefit of the copartner.

APPEAL FROM MASON CIRCUIT COURT.

May 30, 1867.

OPINION OF THE COURT BY JUDGE WILLIAMS:

The main controversy growing out of this appeal seems to be related to the recovery by appellees of an undivided one-half of the 200 acres of land, which General H. Lee's heirs had recovered as an undivided moiety of the 451 acres tract of A. Fox's heirs which had been patented to Arthur Fox, deceased, and R. Woods, and the rents issuing out of it.

Without entering into a minute detail of the complication of the various title and transactions relative thereto, of the different tracts, it will be sufficient to state that General Harry Lee and Major R. Graham became invested, in the year 1808, by undivided moieties, with the title of Henderson and Brent, to a tract of 14,350 acres of land in Mason county; that this survey included the survey of 451 acres claimed by Arthur Fox and R. Wood, as well as a survey of 2,746 acres patented to Arthur Fox, deceased.

That General Lee was then the executor of Arthur Fox, deceased, had married his widow and was guardian to his four minor children, and that Major R. Graham had married one of the daughters of decedent Fox. That in the purchase of this title of Henderson and Brent it was understood by both Lee and Graham that no adverse title should be set up against the children and devisees of Arthur Fox, but that the purchase as to the conflicting title with their lands should inure to their benefit, and this understanding was subsequently agreed on between them and Arthur Fox, jr., to whom his father had devised all the 2,746 acres tract, which he had not surrendered to Mills in a compromise of their conflicting claims as to it. Lee and Graham having agreed by compromise Mills title as his land was also covered by this 14,350 acres survey.

After this purchase by General Lee and Major Graham from Henderson and Brent, and long previous to the year 1828, Major Graham left Kentucky and went to Missouri and seems never to have been back but once previous to General Lee's death, in the year of 1845, and that in the year of 1828.

There sprang up a furious family litigation between General Lee and Arthur Fox's children, with which Major Graham seems to have taken no part, doubtless from notions of delicacy growing out of his relationship to the parties, as well as his pecuniary connections with General Lee.

In a suit brought by General Lee against Arthur Fox, jr., and his coheirs in 1836, he recovered a moiety of the 451 acres tract which was separated and allotted to him by the court, consisting of 200 acres on the upper side of the survey, and General Lee having died previous to November 15, 1846, and during the progress of this suit, the title to the 200 acres was decreed to his heirs by the interlocutory order of May 26, 1848.

September 9, 1851, Major R. Graham, executor, and devisees filed their bill against the executor, devisees, and heirs of General Henry Lee asserting, among other things, their right to an undivided half of this 200 acres of land and its rents, and for a general settlement, partition of their rents, etc., and this litigation from one cause and another was protracted without hearing until the year 1864 when the court rendered its judgment now appealed from.

In the statement of the partial settlement made between General H. Lee and Major R. Graham, dated August 15, 1828, Lee charges Lee and Graham with "$125 paid Wood and Clark ½ 451 acres" under date of November, 1810; and in same statement under date of December, 1812, charges them with "$50 paid Clarke for improvements."

And in his letter of December 17, 1828, from Clover Hill to Major Graham he says "since you left this I have been trying to dispose of our lands, together with the undivided moiety of the 451," and subsequently in the same letter he alludes to this interest in the 451 acres in such manner as to cause but little doubt that he then considered Major Graham interested in this undivided moiety. It was doubtless the policy of General Lee and Major Graham to litigate with some of the adverse claimants to their large claim, to compromise with others, and to purchase from others, and thus to get possession as far as possible, and at as cheap rates as possible, of this large tract of land, but in all this not to disturb the heirs and devisees of Arthur Fox, deceased, but future misunderstandings resulted in litigation between these and General Lee, but as to the undivided moiety of Hannah Wood and Clarke in this 451 acres patented to R. Wood and Arthur Fox which conflicted with Henderson and Brent's patent, sold to General Lee and Major Graham, by whatever means General Lee obtained it, must inure to the joint benefit of himself and Major Graham, and unless the latter by some conduct precluded himself from a right to claim its benefit, and so far from finding this in the record the charges in General Lee's account against Lee and Graham, and his letter to Major Graham, go to establish that both parties regarded the procurement of Hannah Wood and Clarke's conflicting title as being for their joint benefit, although the only title paper exhibited is the deed of Clarke to Henry Lee, but this was for the nominal consideration of $25 and only con-

veyed an undivided half of a half of the tract, whilst the items in the account as charged and letter of General Lee show there were really other transactions, but as the purchase of these adversary claims inured to the title of Henderson and Brent already in H. Lee and R. Graham perhaps it was not deemed essential to have any recorded evidence of title from them.

The judgment of the court allowing to R. Graham's devisees one-half of this 200 acres part of the 451 acres tract was, therefore, proper.

General Lee had been at great trouble, expense, and harassment in getting possession and protecting the lands thus jointly purchased, and prosecuting and defending suits and litigation relative thereto, and had never received compensation therefor. The long delay in demanding settlement by Major Graham may fairly be construed into a tacit consent on his part that General Lee's troubles and expenses were equivalent to any rents or indebtedness on his part to Major Graham on account of these rents, and we think they were, and, therefore, approve of the judgment disallowing anything up to General Lee's death to Major Graham's executors and devisees, as well as the judgment allowing rents afterward.

The right to and regularity of the revivor of the suit as to Lee's heirs and devisees is questioned.

It was originally brought against the executors of General Lee, one of whom still survives, and against his children and devisees, three of whom died during the progress of the suit, leaving children and heirs, and one of whom died unmarried and intestate, leaving her brothers and sisters and their descendants as her heirs; therefore these children and heirs of these deceased children of General Lee were essential parties as to the 200 acres of land because the title had been vested in them by judgment and deed of the court.

It may be inferred that the plaintiffs did not know of the death of these parties when the judgment of May, 1863, was rendered, for their death seems to have been first suggested by Shelltz, the surviving executor of General Lee, and his wife, a daughter of said Lee, by petition to set aside said judgment and for a retrial though some had been dead several years.

The court having set aside the judgment on this petition, the plaintiffs filed an amended petition making the children and

heirs of the decedents parties, had process and service and warning orders, etc. These new parties appeared and demurred to this amended petition, which the court overruled, and by proper orders revived the action against them, and subsequently rendered judgment.

> Section 569, Civil Code, provides that " an order to revive an action against *the representatives of a defendant shall not be made, without the consent of such representatives or successor, unless in one year from the time it could have been first made."*

This section evidently applies to executors, administrators, and such representatives as are personal to the decedent defendant, as more certainly appears by the preceding section, and does not apply to heirs who represent their own interest only, the title having descended to them; and we know of no section of the Code or provision of law, nor have we been referred to such, prohibiting a revivor of a suit for realty against the heirs who have become invested with the title until the suit shall be barred by lapse of time, or an order abating the suit shall be entered by the court; the court did not, therefore, err in reviving this suit, even if the amended petition should be regarded as a mere bill of revivor, but perhaps so far as these new parties are concerned, it might well be regarded as an original suit against them, and its allegations would seem to authorize this; but, however this may be, this court has heretofore recognized the right of a party to have his suit revived by amended record and process, whilst perhaps a more simple and direct way would be to have an order and it served as provided by the Code.

Wherefore, the judgment is affirmed on original and cross-appeal.

*Wadsworth,* for Appellants.

*Taylor,* for Appellees.