# Weaks, by, et al. v. McDowell Construction Company and Louisville & Nashville Railroad Company.

(Decided May 9,1913.)

## Appeal from Christian Circuit Court.

1. Damages—Personal Injury—Explosives— Negligence—Evidence—Competency.—Where in an action for damages against a construction company for negligently allowing dynamite caps to remain in an exposed and unguarded condition, resulting in injury to plaintiff, there is no direct evidence that any employee of the company placed the caps in that position, but the possession and use, by the employees, of similar explosives is relied on to establish that fact, evidence that defendant's employees knew that it was dangerous to place the caps in such a position, and that none of said employes bore ill will toward the company, was admissible for the purpose of rendering less probable the inference that some employee of the company, either negligently or maliciously, placed the caps where they were found.

2. Damages—Personal Injury—Explosives—Negligence—Evidence — Competency.—In an action for damages against a construction company for negligently allowing explosives to remain in an exposed and unguarded condition, evidence that on former occasions the magazine in which such explosives were kept had been broken open and certain of the contents removed therefrom by persons other than employes of the defendant company, was, in the absence of direct evidence on the question, admissible for the purpose of reducing the probability that the explosives were placed in such position by defendant's employes.

3. New Trial—Newly Discovered Evidence—Sufficiency and Effect. —A new trial on the ground of newly discovered evidence will not be granted unless the evidence be of a decisive character, and such as to render a different result reasonably certain.

BREATHITT & BREATHITT, and DOWNER & RUSSELL for appellants.

SELDEN Y. TRIMBLE and TRIMBLE & BELL for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, William Cooper Weaks, suing by his guardian, Mrs. Willie Weaks, brought this action against the McDowell Construction and the Louisville & Nashville Railroad Company to recover damages for personal injury. The jury returned a verdict in favor of the defendants. Plaintiff appeals.

The Louisville & Nashville Railroad Company runs through the City of Hopkinsville. It contracted with the

McDowell Construction Company to widen and deepen a certain cut in the suburbs of that city. The cut runs for a considerable distance, and in some places is as deep as 28 feet. On the west and southwest side of the cut, and near to it, there is a well beaten path which has been used for many years by pedestrians in going to and from their places of business. Neither the railroad right of way nor the ground on the west side of the cut is enclosed. In carrying out its contract, the McDowell Construction Company used two steam shovels, each of which weighed many tons. Each of the steam shovels was on regular car trucks and wheels, and self-propelling. When stationary, the steam shovels were used for the purpose of lifting rock, earth, etc. As in the case of other car wheels, the ends of the axles were fitted into journals, which were filled with waste, oil, etc., for lubricating purposes. The top of the journals was loose and could be raised and lowered. The work in which the construction company was engaged was completed about May 1, 1911. When the work being done by the two steam shovels was completed, they were run on the trucks out of the cut, and then backed on a temporary track to the high ground some 20 or 25 feet above the level of the railroad track passing through the cut. The beaten path referred to ran between the two steam shovels and the cut. During the progress of the work many people—men, women and children—visited the cut for the purpose of watching the operation of the machines, and many persons used the beaten path leading by the machines after they were placed on top of the cut. During the progress of the work many explosives, including dynamite caps, were used by the construction company.

About one o'clock P. M. on the 19th of June, 1911, plaintiff, William Cooper Weaks, who was 15 years and nine months of age, together with Cyrus Radford, a boy 14 years of age, and Christy Smith, 15 years of age, went to the cut and turned into the beaten path leading by the machines. It was a hot day and when they reached the steam shovel nearest to them they all sat down on the ends of the cross ties in the shade of the steam shovel, and on its east side. While in this position Radford discovered that the cast iron lid of the journal on one of the trucks was partly open. Upon further examination, he saw a small tin box projecting out of the journal between the top and frame work of the journal. The tin box had some lettering on it, including the

words "blasting caps." Radford pulled the tin box out of the journal and opened it, dropping the top on the ground. It was partly filled with metal caps containing nitro-glycerine. The boys then proceeded to appropriate the caps and divide them into three portions. They then threw the tin box on the ground. The boys all claim that they did not know that these caps were dangerous. Later in the afternoon they went to the tennis grounds to play tennis with some girls. While there plaintiff, Weaks, who was not playing tennis, took some of the blasting caps and began to cut the explosive material out of them with the blade of his pocket knife. He removed the contents of one of the caps and placed it on a post. He attempted to explode it by throwing a match at it. His attempt, however, was not successful, but Cyrus Radford came up and struck a match to the explosive and it promptly went off, making considerable noise. Plaintiff, Weaks, then proceeded to cut the explosive out of another cap. While so engaged the cap exploded, severely injuring his left hand.

The case was submitted to the jury on the theory that the defendants were liable if the blasting caps were unusually attractive to children and were placed by the employees of the construction company in such an exposed and unguarded position that they could be easily seen and discovered by persons and children congregating or visiting such point, and that the plaintiff took possession of them, and because of his tender years and want of judgment and discretion, he did not know the danger of handling them and did not understand the risk he ran in undertaking to remove the explosive substance from the caps, and thereby unintentionally caused the explosion.

Though the question of the defendant's liability under the facts adduced in evidence has been elaborately briefed, yet in view of the fact that the case was submitted to the jury by instructions which are not complained of, and the jury found for the defendants, we deem it unnecessary to pass on the question of a peremptory.

A reversal is asked on the ground of the admission of incompetent evidence and on the further ground of newly discovered evidence.

The evidence complained of as being incompetent is: (1) The statement of the assistant superintendent of the construction company to the effect that all the employees of the company knew that is was a dangerous thing to place caps in the journals of the steam shovels,

and so far as he knew none of the employees entertained any ill will toward the company or had any motive for putting the caps in the journal.

(2) Evidence to the effect that the magazine in which the explosives were stored and the chest in which they were kept while the blasting was in operation, were on several occasions broken into and dynamite caps and other explosives taken therefrom.

The question was: Did any employee of the construction company place the caps in the journal? There was no direct evidence to this effect. The only evidence introduced on behalf of the plaintiff was that caps like those found in the journal had been used for some time by the employees of the company in blasting near the steam shovels. On the other hand, the witnesses for the defendant testified that the caps could not have been put in the journal before the shovel was moved, for in that event there would have been an explosion. No blasting caps were used by the company after the machine was moved. Even when they were used they were used by the powder man, who never permitted any of the other employees to handle them. He did not place them in the journal. At the time of the trial, the various employees engaged in the construction work were scattered over the country and could not be secured as witnesses. It was also shown that the explosives, including the dynamite caps, were kept in a magazine, which was some distance away. This magazine was securely built and fastened by a Yale padlock. The powder man also had a chest in which he removed the explosives from the magazine to the place where they were to be used. This chest was always kept securely locked. It was the theory of the plaintiff that some one of the employees negligently placed the caps in the journal, intending thereafter to remove them. As said before, there was no direct testimony on this question. Plaintiff's theory is based entirely on the use and possession of the caps by the company's employees. The question, therefore, was one of inference or probability. In the absence of any evidence tending to show that other persons were in the possession of caps like those found in the journal, it was the reasonable inference that some employee of the company, having the use and possession of the caps, actually placed the caps in the journal. If any employee did this, he did it either maliciously or negligently. Though plaintiff's theory is that it was done negligently, this

was a mere theory, and as a matter of fact, it may have been done maliciously. To rebut the inference based on the use and possession of the caps by the employees of the company, the defendants proved that the employees knew that the caps were dangerous, and that none of them had any ill will towards the company or any motive for placing the caps in the journal. Being a case of mere probability, the evidence in question, though of but little probative value, was admissible for the purpose of rendering less probable the inference that some employee of the company, either negligently or maliciously, placed the caps in the journal. In addition to this it was competent to show that the magazine and tool chest had been broken open and dynamite caps taken therefrom, for the purpose of establishing the fact that the caps in question were not in possession of the employees alone, but were in possession of others who had an equal opportunity to place them in the journal. In other words, where there is no direct testimony in the case, and possession of the caps is relied on to establish the fact that some employee placed the caps in the journal, then possession by persons other than employees is equally admissible for the purpose of overcoming the inference deducible from the possession by the employees. In each case the question is one of inference or probability, based on opportunity. By showing that others than employees had possession of similar caps, and therefore an opportunity of placing them in the journal, the probability that they were placed there by employees was necessarily reduced. It is simply a case where plaintiff's evidence shows that the caps might have been placed in the journal by some employee of the construction company, while defendants' evidence shows that they might have been placed in there by someone else.

The only newly discovered evidence relied upon for a new trial is the affidavits of Raymond West and Willard Hawkins to the effect that during the winter and spring of 1911, and before the work of blasting was completed, they saw gunpowder and dynamite lying loose on the bank of the cut and unprotected, and that one of them, just a few days before plaintiff was hurt, found a blasting cap lying loose on the ground on the east side of the cut. The affidavits further state that when they saw the explosives the powder man was not near, but the same could have easily been taken away by anyone disposed to do so,

without the knowledge of the powder man or anyone connected with the work. It is the invaribale rule not to grant a new trial on the ground of newly discovered evidence unless the evidence be of a decisive character and such as to render a different result reasonably certain. Hays v. Davis, 20 Ky. L. Rep., 342; C. & O. Ry. Co. v. Freil, 19 Ky. L. Rep., 152. The evidence in question does not come up to the required standard. It is as favorable to the defendants as to the plaintiff. While it shows that the company's employees had an opportunity to obtain possession of the explosive, it also shows an equal opportunity on the part of the people who in such large numbers frequented the place where the work of excavation was being carried on. In the latter respect its probative effect is similar to defendants' evidence that the magazine and chest containing its explosives had frequently been broken into and explosives removed therefrom.

Judgment affirmed.