## George v. Sohn's Administrator.

### Same v. Same.

(Decided May 10, 1921.)

## Appeals from Pike Circuit Court.

1. Partnership—Transactions Between Partners—Good Faith.— Where one partner procures the other to sign an agreement which is manifestly unfair and unjust, the agreement will not be upheld if it be made to appear that the injured party's signature was obtained by a promise which was never, and could not be carried into effect.

2. Partnership—Action for Settlement—Finding of Chancellor.—In an action for a settlement of a partnership, evidence considered and held to sustain the finding of the chancellor in favor of plaintiff.

3. Appeal and Error—Evidence—When Motion to Retake Deposition Comes too Late.—In an action for the settlement of a partnership, it was not error to overrule defendant's motion to retake his own deposition, where the motion was made eight months after he had completed his proof, and plaintiff had died in the meantime, and no good reason was shown why the offered evidence was not introduced in the first place, or within a reasonable time thereafter.

4. New Trial—Grounds—Newly Discovered Evidence.—A new trial for newly discovered evidence will not be granted unless the evi-

dence be of such a decisive character as to render a different result reasonably certain.

5. New Trial—Grounds—Newly Discovered Evidence.—Newly discovered evidence relied on as ground for new trial in an action for the settlement of a partnership held not of such a decisive character as to render a different result reasonably certain

AUXIER, HARMAN & FRANCIS for appellant.

J. J. MOORE for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming in each case.

These two appeals, one from a judgment rendered in an action brought by George H. Sohn, and afterwards revived in the name of his administrator, against E. E. George for a settlement of a partnership, and the other rendered in an independent action brought by E. E. George against George H. Sohn's administrator for the purpose of obtaining a new trial of the first action, have been consolidated and will be considered in one opinion.

In the month of June, 1915, George H. Sohn and E. E. George entered into a verbal partnership contract, by the terms of which George agreed to secure options or leases on coal lands at such places as he might be able to secure them, and Sohn was to assist in furnishing such money as might be necessary for that purpose. Of the net profits of the undertaking, George was to receive one-half, his son, one-fourth, and Sohn, one-fourth. Thereafter, George began the work of securing leases and numerous letters and telegrams which passed between him and Sohn show that he was constantly calling on Sohn for money and receiving various sums which were used by him to defray his expenses while engaged in carrying out the undertaking. George first organized the Uneda Coal & Coke Company, with a capital stock of $1,000,000.00, George receiving $998,000.00 in stock, George's son, $1,-000.00 and Sohn, $1,000.00. Later on, the Detroit-Kentucky Coal Company was organized, and George, in consideration of the assignment of certain leases, received 2,500 shares of the stock, of the par value of $10.00. Of this stock, he sold 430 shares for the sum of $4,300.00. He also transferred 100 shares to Sohn. Later on, the E. E. George Coal Company was incorporated, and George received stock to the amount of $25,000.00, in consideration of other leases which he assigned to the company.

On December 1, 1916, George and Sohn entered into a written contract, by which George, in consideration of the sum of $1,500.00, agreed and bound himself to sell and transfer to Sohn one-fourth of all his interest in the Uneda Coal & Coke Company, the transfer "to take place when the said Uneda Coal & Coke Company begins active operation." George claims that all the money furnished by Sohn was used to procure leases to be assigned to the Uneda Coal & Coke Company, and that the above contract was executed in full settlement of the partnership affairs. He further says that none of Sohn's money was used to procure any of the leases that were assigned to the Detroit-Kentucky Coal Company, or the E. E. George Coal Company, and that those leases were not embraced by the partnership. On the other hand, Sohn says that when the above contract was executed, George represented to him that the Uneda Coal & Coke Company was to be the mother company, and all the leases were to be finally assigned to it; that instead of doing this, the valuable leases were all transferred either to the Detroit-Kentucky Coal Company, or to the E. E. George Coal Company.

The special commissioner, to whom the case was referred, found that plaintiff was entitled to a judgment against George (1) for $1,075.00, being one-fourth of the 430 shares of stock in the Detroit-Kentucky Coal Company sold by George, (2) for 417½ shares, being one-fourth of the remaining shares of stock therein, less the 100 shares received by him, and (3) for 625 shares of stock in the E. E. George Coal Company, being one-fourth of the capital stock thereof.

Upon the filing of this report George asked the privilege of retaking his own deposition, but this was denied. Thereafter his exceptions to the commissioner's report were overruled, and judgment was rendered in conformity with the report.

Appellant insists that the commissioner and chancellor erred in not holding that the contract of December 1st, by which appellant, in consideration of $1,500.00, agreed to sell and transfer to Sohn a one-fourth interest in the Uneda Coal & Coke Company, was not a complete settlement of the partnership affairs. It is admitted that the Uneda Coal & Coke Company has no assets of any value, and that it has never begun operations. Hence, if it be held that the contract of December 1st prevents Sohn from recovering any interest in the Detroit-Ken-

tucky Coal Company, or the E. E. George Coal Company, the result will be that Sohn will receive nothing for his time and money, whereas George will be the sole beneficiary of the partnership relations.   In the first place, it may be doubted if the contract in question will necessarily bear the interpretation that the assignment by George of a one-fourth interest in the Uneda Coal & Coke Company was the entire consideration which Sohn should receive from the money which he had furnished.   In the next place, the commissioner and chancellor found that the contract was executed with the understanding that the leases obtained by the partnership were to be assigned to the Uneda Coal & Coke Company.   We have frequently written that there is no relation of trust or confidence known to the law that requires of the parties a higher degree of good faith than that of a partnership, and that the obligation of partners to exercise the utmost good faith towards each other begins with the preliminary negotiations, and continues throughout the entire life of the partnership.   Rankin v. Kelley, 168 Ky. 463, 173 S. W. 1151. Hence, where one partner procures the other to sign an agreement, which is manifestly unfair and unjust, the agreement will not be upheld if it be made to appear that the injured party's signature was obtained by a promise which was never, and could not be, carried into effect. We therefore conclude that the contract was no defense to Sohn's claim for an interest in the stock of the other corporations to which the leases obtained by the partnership were assigned.

We find no merit in the contention that Sohn's money was used exclusively to procure the options assigned to the Uneda Coal & Coke Company.   He and George were engaged in the common enterprise of procuring leases and dividing the profits.   Where this is the case, and certain leases are procured, the courts will not look with favor upon the claim of one partner that certain leases are embraced by the partnership, while others are not, unless the evidence to that effect is clear and convincing. Not only does George's evidence fail to come up to this standard, but the evidence considered as a whole leaves no doubt that Sohn assisted in obtaining several of the leases that were assigned to the Detroit-Kentucky Coal Company, and at least two or three leases that were assigned to the E. E. George Coal Company.   And though George claims that Sohn's services in selling the stock of the Detroit-Kentucky Coal Company were performed

as a mere agent of that company and in consideration of certain stock assigned to him, it is clear that Sohn's efforts in the sale of stock resulted in the procurement of the capital necessary to put the company on its feet, and in view of the letters and telegrams which passed between him and George, we are not inclined to hold that his sole interest in the matter was that of a mere agent. On the whole, we think the evidence sustains the finding of the chancellor.

The court did not err in refusing appellant's motion to retake his deposition. The record is voluminous. Appellant's last depositions were taken on October 11, 1918. The motion to retake was not made until about eight months thereafter. In the meantime Sohn had died, and no good reason was shown why the offered evidence was not introduced in the first place, or within a reasonable time thereafter.

As before stated, the second action mentioned in the caption was brought by George for the purpose of obtaining a new trial on the ground of newly discovered evidence. The evidence relied on is the statement of W. B. Mitchell, with whom Sohn boarded, that he had a conversation with Sohn in the fall of 1916, in which he asked Sohn if he had any stock in the E. E. George Coal Company. Sohn said: "No, not a cent," and further remarked that he did not want any; that he didn't want to be associated in business with any such man as he had found E. E. George to be. It is the invariable rule not to grant a new trial on the ground of newly discovered evidence, unless the evidence be of such a decisive character as to render a different result reasonably certain. Weaks v. McDowell Construction Company, 153 Ky. 691, 156 S. W. 127. The alleged statement of Sohn, that he did not own any stock in the E. E. George Coal Company, was true, as no stock had been issued to him, and neither that statement, nor the further statement that he did not want any stock and did not want to be associated in business with George, was necessarily inconsistent with his claim for one-fourth of the profits from the leases assigned by George to the E. E. George Coal Company, for he may not have known that his interest in the profits would be measured by one-fourth of George's stock, and even if he did, he may not have desired to keep the stock and be associated with George, in view of the fact that they

were not then on friendly terms. We therefore conclude that the evidence is not of such a decisive character as to render a different result reasonably certain.

The judgment in each case is affirmed.