## Ashland Hotel & Realty Co. v. Carruthers.

Oct. 27, 1942.

Robert M. Stephenson, Thomas S. Dawson and Woodward, Dawson & Hobson for appellant.

Field McLeod and Stoll, Muir, Townsend & Park for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The appellant instituted this action in the Woodford Circuit Court to recover damages of appellee for breach of contract. The court sustained a general demurrer to the petition and this appeal follows.

On October 26, 1927, appellant leased to appellee certain hotel property in the city of Ashland, Kentucky, for a period of twenty years. The lease was supplemented by another contract executed at the same time, containing this clause, out of which this controversy arose:

"First, that the lessor, Ashland Hotel & Realty Company, hereby agrees that if the lessee in said lease shall within a reasonable time cause the organization of a corporation to operate as a hotel the premises mentioned in said lease, and shall cause to be issued 7% cumulative preferred stock of said corporation amounting to Two Hundred Thousand ($200,000.00) Dollars par value, the first party, Ashland Hotel & Realty Company does hereby subscribe for and agree to purchase Fifty Thousand ($50,000.00) Dollars worth of said stock, and agrees that it will on or before November 1, 1927 furnish to the lessee satisfactory proof and evidence whereby it has arranged to pay for Fifty Thousand ($50,000.00) Dollars worth of said stock on or before January 1, 1928. And it further agrees that it will take and pay for said Fifty Thousand ($50,000.00) Dollars worth of stock on or before January 1, 1928, and in the event that lessor fails to satisfy lessee on or before November 1, 1927, of its ability to pay for said stock on or before January 1,

1928, and if it fails to pay for same prior to January 1, 1928, then the lease this day made by the parties hereto shall, at the option of the lessee, become null and void and of no effect."

It is admitted by appellant that this clause of the contract was unilateral at its inception and appellee would not have been bound thereby but for subsequent events and conduct of appellee by which he made the contract binding on both parties.

The petition sets out the contract, lease, etc., as indicated above, and further alleges:

"Plaintiff further states that pursuant to the provisions of said contract the defendant did cause the organization of a corporation to operate the hotel mentioned in said lease and did cause such corporation to have authorized $200,000 par value of 7% cumulative preferred stock and on or about January 1, 1928 purchased, or caused to be purchased, several thousand dollars par value of said stock and demanded of plaintiff that it purchase and pay for $50,000.00 par value of said stock.

"Plaintiff, relying upon said contract and its agreement with the defendant that said corporation would issue $200,000 total par value of said stock and upon representation of the defendant that he would cause the full $200,000 of 7% cumulative preferred stock to be issued and sold, did on or about January 1, 1928, subscribe for $50,000 of said stock and at the time of such subscription paid into said corporation $50,000 in cash, less 10% brokerage commissions and said corporation through subscription of this plaintiff received in cash a total of $45,000.00.

"Plaintiff states that upon payment by it of the subscription to said stock, the defendant became obligated to cause the issuance of the remaining authorized 7% cumulative preferred stock so that a total of $200,000 of such stock would have been sold and such corporation would have had as capital a total of $200,000.

"Plaintiff states that the corporation formed by the defendant immediately assumed the operation of the hotel properties mentioned in the lease and continued the operation of such hotel company for

a period of less than a year, at which time the operating company became insolvent and because of such insolvency, a Receiver for it was appointed by the Boyd Circuit Court.

"Plaintiff further states that with the exception of approximately $10,000 par value of stock, the defendant wholly failed to carry out his agreement with plaintiff by purchasing or causing to be purchased a total of $150,000 par value of said preferred stock, and because of this failure, the corporation so organized had insufficient capital to equip and operate said hotel and for this reason was financially unable to carry out a successful operation of the same. By reason of the failure of the defendant to cause said corporation to issue a total of $200,000 of 7% cumulative preferred stock the defendant breached its contract with the plaintiff, and by reason of said breach the $45,000 paid into said corporation by this plaintiff was lost and no part of it has been recovered by plaintiff.

"Plaintiff states that by reason of the defendant's breach of said contract, this plaintiff was damaged in the sum of $45,000, which was the amount paid into said corporation by plaintiff in reliance upon the representations of the defendant as herein set out."

We are not informed by the demurrer nor the court's order sustaining it why the petition fails to state a cause of action. It is apparent, however, from the briefs and arguments of counsel that the demurrer was sustained upon the ground contended for by appellee; namely, that the petition together with the contract filed therewith as an exhibit show on their face that at the time appellant paid in its $45.000 for the stock as provided in the contract, it knew that appellee had not performed his part of the contract in that he had not sold $200,000 of the stock (less the $50,000 subscribed to by appellant) but had only sold $10,000 of it and, therefore, appellant waived any breach of the contract by appellee by paying for the stock prior to the performance of the agreement by appellee. On the other hand, it is the contention of appellant that there was a part performance of the contract by appellee, in that he had caused the corporation to be organized, had issued the amount of stock specified in the contract and had actually sold a part of the stock,

and that even though the contract was unilateral at its inception such part performance by appellee made it a binding contract on both parties. And, it is the further contention of appellant that since by the terms of the contract it was required to pay for the amount of stock it agreed to purchase before January 1, 1928, or forfeit its lease, and since the contract provided that appellee was to have "reasonable" time to market or sell said stock, two months—November 1 to January 1—might not have been a reasonable time for appellee to have sold such a large amount of stock in that community and appellant had the right to presume that appellee would sell the remainder of the stock within a reasonable time thereafter.

To support appellant's contention the cases of Kelley v. Ivyton Oil & Gas Co., 204 Ky. 804, 265 S. W. 309; Louisville & Nashville R. R. Co. v. Coyle, 123 Ky. 854, 97 S. W. 772, 99 S. W. 237, 8 L. R. A., N. S., 433, 124 Am. St. Rep. 384; Pennagrade Oil & Gas Co. v. Martin, 211 Ky. 137, 277 S. W. 302; Ham v. Miss C. E. Mason's School, 249 Ky. 478, 61 S. W. (2d) 7, and cases therein cited, are relied on. In some of the above cases, except Louisville & Nashville R. R. Co. v. Coyle, it appears that there was *full* performance by the party not bound by the contract and it was held that both parties became bound. The other cases were decided upon facts not present in the case at bar. The question involved in the case at bar is whether or not *part* performance is sufficient to make the contract binding. The Coyle case, supra, appears to be decisive of the question. The railway company offered to take all the ties of a designated type delivered to it by Coyle at a designated place within the next twelve months—from August 16, 1902, to August 16, 1903. The railway company accepted and paid for all ties delivered by Coyle until October 29, 1902, and then refused to receive any ties from him thereafter. Coyle sued on the contract, alleging a breach thereof by the railway company, and the action was defended upon the ground that there was no mutuality in the contract and therefore it was not binding upon either party and could be broken at any time by either. It seems that the contract or agreement was made by letters which were indefinite. In disposing of the question the court said [123 Ky. 854, 97 S. W. 773, 8 L. R. A., N. S., 433, 124 Am. St. Rep. 384]:

"It may be said for the reason indicated that this letter and the reply did not constitute a binding contract upon either party (New York Life Ins. Co. v. Levy's Adm'r, 122 Ky. 457, 92 S. W. 325, 29 Ky. Law Rep. 6 [5 L. R. A., N. S., 739]), but it was a contract not required by the statute of frauds to be in writing, and a part performance of it relieved it of the lack of mutuality contained in the writings. The letters which were uncertain were made definite by the conduct of the parties in construing them and performing the contract, and when the contract was thus accepted and performed in part by both of the parties, it became a binding obligation upon each of them, and neither could thereafter abandon or break it without responding in damages to the other."

Appellee attempts to distinguish the above case in that the opinion does not say that *full* performance by the party not bound is *not* a condition precedent. It is true that the court did not say in exact language that full performance is not necessary but it did say that part performance was sufficient to make the contract binding on both parties. It was not necessary then to state the converse; i. e., that full performance was *not* necessary. We are unable to distinguish that case from the case at bar. It may be further noted, however, that in the case supra there was only a part performance by both parties, while in the case at bar appellant had fully performed and appellee partly performed, and for this reason it might be said that the present case is even stronger in favor of appellant's contention than the case supra.

It is further pointed out in the Coyle case that where a contract is not compulsory or binding on one party, and he has accepted an election to perform or not as he chooses, and he elects to perform his part of the contract, and the other party accepts his election, the want of mutuality is thereby eliminated, and he may then have specific performance in proper cases against the adverse party although no cause of action would originally lie for a breach of performance. We do not think that the phrase "election to perform" means necessarily a performance in full. An election may be made by part performance and, perhaps other acts evidencing intention of an election, and when this is done want of mutuality then ceases and the contract becomes binding on both parties.

This brings us to the question of what constitutes a

"reasonable time" provided in the contract for appellee to perform all the acts and things required of him as a condition precedent to appellant paying for the stock it agreed to take. It is well known that what may constitute reasonable time depends upon the facts, nature of the transaction, and attendant circumstances involved in each case. As we have already noted above, appellee had only approximately two months' time in which to organize the corporation, have the corporate authorities to authorize the issuance of $200,000 of stock, have the stock certificates printed or issued and made ready for sale which, of course, required some time, and to sell $150,000 of the stock in addition to the $50,000 purchased by appellant. It must not be overlooked that the sale of the $150,000 of stock in the enterprise involved herein in that community, is no small undertaking. Since appellant had performed in full its part of the contract and appellee had partly performed his part of the contract and, appellant being bound to pay in its money before January 1, 1928, or suffer a forfeiture of its lease, we do not think the mere fact that appellee had not sold the remainder of the stock before January 1 was notice to appellant that appellee would not or might not sell the remainder of the stock within a reasonable time thereafter. We conclude, therefore that the petition stated a cause of action and the demurrer should have been overruled.

Judgment reversed and remanded for proceedings consistent with this opinion.