## Betts et al. v. Smither et al.

March 11, 1949.

Rehearing denied June 24, 1949.

R. L. Bronaugh and John C. Watts for appellants.

Robert M. Odear and John S. Deering for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The suit is for specific performance of a contract to convey a half interest in property and to set aside a deed to a third person.

W. D. Betts and Joseph S. Smither had been partners in the undertaking business in Nicholasville since 1928. On April 15, 1944, both of them signed a contract to buy certain property as a funeral home from G. A. Roy and others for $12,750, of which $1,275 was then paid. The title bond named both parties as the purchasers. It provided for the execution of a deed to them on or before August 1, 1944, at which time the balance of $11,475 should be paid. Of the initial or cash payment $500 was paid by the firm and the balance of $775 by Smither personally. A local bank had agreed to lend both parties $8,000 of the final payment. Not long before the time of consummation arrived, August 1, 1944, Smither advised Mr. Bronaugh, the president of the bank and an attorney, that Mr. and Mrs. Knight (who we gather are relatives of Mrs. Smither) would not help finance the purchase unless the title were in Smither alone. Mr. Bronaugh suggested that the deed be made to Smither, and when Betts had paid his part of

the balance of $4,250 to Smither, he could make Betts a deed to his half interest in the property. It was further agreed that the partnership would pay $125 a month to Smither to cover the interest, taxes and insurance, the balance being applied on the principal of the debt of $4,250; also that Betts should receive a credit of $25 for each funeral conducted by the firm. Betts was a licensed embalmer, and it appears that Smither had looked after the accounts and business of the firm. At this time Smither had had some heart trouble and was less active in the management. It was contemplated that Mr. Bronaugh would draft the contract with respect to the taking of title and Betts' interest therein, but for some reason he was not called upon to do so. On July 31, 1944, Roy et al. executed a deed to Smither alone. The parties moved into the building on August 1, and on August 2 they each signed the following paper:

"This agreement made between J. S. Smither and W. D. Betts, on property purchased from G. A. Roy and heirs, on April 15th., 1944, this agreement to this date made by both parties was (500.00) five hundred dollars check paid to Johns & Robinson, for part payment on (12,750.00) twelve thousand seven hundred and fifty dollars (4,250.00) four thousand two hundred and fifty dollars, paid to G. A. Roy, and heirs, the balance, balance (8,000.00) eight thousand dollars note made to Farmers Bank. When one half of the (4,250.00) four thousand two hundred and fifty dollars is paid to J. S. Smither by W. D. Betts said W. D. Betts is to assume one half of the (8,000.00) eight thousand dollars note at the Farmers Bank, which would entitle said W. D. Betts one half interest in the purchased property."

Smither drew out $125 a month of the firm's money for ten months. Some money was expended in improving the property and furnishing the funeral home. Betts filed a statement showing that he was entitled to be credited with the total of $975. But this was only an estimate, as Smither had kept the books.

On August 22, 1945, Smither entered into a contract with W. E. Parks in which is recited their intention of "operating a health home" in this property. The appraised value was stated to be $17,000, which is $4,250 more than had been paid for it. The instrument further

recites that Parks would pay and discharge the mortgage debt of $8,000 to the bank, pay Smither $500, and "stand for the present in the same relation as the original lien holder, viz.; the Farmers Bank"; also "The title to said property does not at this time pass, but shall be owned and held by the first party (Smither) until" a corporation should be formed for operating the health home, at which time the deed "will pass from the first party" as may be agreed upon. Parks paid the note at the bank. Shortly afterward Bronaugh advised Parks in the presence of Betts and Garland Holcomb (who was prepared to back Betts financially) that Betts owned a half interest in the property and told Parks of the existence of the contract entitling him to the conveyance of his interest. Parks responded that he could not be hurt as he had a lien for $8,000 on the place.

In December, 1945, January, 1946, and February, 1946, Betts advised Smither that he was ready and willing to pay his half of the balance due and assume half of the bank note. At first Smither was evasive. Later he definitely denied that Betts had any rights in the property. On May 22, 1946, Smither executed a deed to Parks of the entire property, reciting full payment of the consideration. Thereupon this suit was instituted by Betts asking, among other relief, that the deed to Parks be declared of no effect as to his rights and that Smither and Parks be required to convey an undivided half interest in the property to the plaintiff. The circuit court dismissed the petition.

The foregoing statements are made as the facts of the case for they are supported by better evidence by far. Smither's claims and evidence are contradicted in all essential particulars by the documents, by the testimony of Bronaugh, Jeter, the cashier of the bank, and Holcomb, as well as Betts, and by all the circumstances. For example, Smither testified he did not remember signing the contract and first cast doubt on the genuineness of his signature, then said his name had been forged. Again: that he himself had personally paid off the $8,000 note and it was never assigned to Parks; whereas the bank's officials testified that Parks did so and the note itself shows the endorsement to him without recourse.

The crude contract signed by Smither and Betts covering the latter's right to a half interest in the property contains the essentials though it does not specifically bind Betts to pay half the purchase price. The evidence, both documentary and parol, elucidates the terms of the instrument. It is claimed by the appellees that it is only an option and is ineffective because of the absence of a consideration and mutuality; that in any event Betts had failed to meet the conditions upon which he might have had the conveyance since he neither tendered nor paid half the balance of $4,250.

There was consideration. Under the title bond given both of them by Roy et al., Betts acquired a joint interest in the property. He surrendered that. The absence of any commitment or promise on his part to pay his share of the balance, which it is claimed makes the contract void as unilateral, was cured by part performance, namely, the payment of his share of the $125 a month and credit of $25 a funeral conducted by him. Ashland Hotel & Realty Co. v. Carruthers, 292 Ky. 245, 165 S. W. 2d 978.

It is argued by the appellees that time for the acceptance by Betts of what they regard as merely an option or as an executive contract of sale was of the essence. This was more than an option. It was a contract which bound Smither to make Betts a deed to what was already his property whenever Betts paid his share of the balance of $4,250. No time being stipulated, a reasonable time was contemplated. Under the circumstances Betts acted within that time. The agreement was made August 2, 1944. One year later Parks and Smither had made their trade, which was for the apparent purpose of "squeezing" Betts out of the transaction, the property having materially increased in value. During that period Betts, in effect, had been paying on his obligation under the agreement respecting the application of $125 of the firm's money every month and receiving credit from Smither of $25 per funeral for his extra services to the firm. Betts had continued to rely upon the agreement, and as Smither's antagonistic attitude appeared he began to advise Smither of his immediate readiness and ability to perform. Smither gave him to understand that he was not entitled to any in-

terest in the property as he had conveyed whatever interest Betts had to Parks. Legal tender was thereby waived.

Another aspect of the case emphasizes the appellant's right in the matter. He and Smither were partners, and they were acquiring the property for use in the partnership business. We repeat what was said in Stephens v. Stephens, 298 Ky. 638, 183 S. W. 2d 822, 824: ''The relationship of partners is a close one and imposes upon each the obligation of loyalty, integrity and the utmost good faith and fairness with respect to partnership affairs. This obligation begins with the preliminary negotiations and continues throughout the life of the relationship. George v. Sohn's Adm'r, 191 Ky. 428, 230 S. W. 904; Jones v. Nickell, 297 Ky. 81, 179 S. W. 2d 195. No undue advantage of one over another by misrepresentation or concealment will receive the approval of the law. A court of equity will always grant relief to the partner who has suffered from a breach of the obligation. One partner will not be permitted to obtain secretly any right that should belong to the partnership and put it to his own individual profit.'' Partnership funds had been used to pay part of the initial payment. This alone impressed upon the property the character of partnership real estate, though the legal title was in the name of an individual partner. **40 Am. Jur.**, Partnership, Secs. 101, 103. A partner in whose individual name is vested title to real estate belonging to the partnership is in equity treated as a trustee holding the property for the benefit of the partnership to the same extent as if the conveyance had named all the parties as grantees. In such a case the court may compel a conveyance if the rights of the copartners require. 40 Am. Jur., Partnership, Sec. 96; Pepper v. Thomas, 85 Ky. 539, 4 S. W. 297, 9 Ky. Law Rep. 122; Archer v. Barry, 62 S. W. 485, 23 Ky. Law Rep. 12; Ross v. Ross, 216 Ky. 577, 288 S. W. 305. In Lee's Ex'rs v. Graham's Ex'rs, 1 Ky. Op. 602, it was held that the purchase of land by one party under a parol agreement that it was for a partnership transaction, though the deed be made to one party only, will be held in a court of equity to inure to the benefit of the copartner.

We are of opinion that the court should not have

dismissed the petition but should have adjudged that the plaintiff, Betts, was entitled to one-half interest in this property and have awarded necessary relief to vest him with title thereto subject to the equities of all parties.

We consider the deed by which Smither conveyed this property to Parks. The first instrument was for the time being but little more than evidence of Parks' right of subrogation to the bank. It is very clear that when the deed was executed Parks had full notice and knowledge of the situation. Only an unsecured note was given for $8,000 in payment of the half interest, the liquidation of the mortgage note covering the other half. We are impressed with the idea that Parks cooperated with Smither to "squeeze out" Betts. Whatever right he acquired under the deed is subordinate to Betts' right in the property. We are of opinion that the court should have set aside the deed to Parks so far as it conflicts with Betts' rights. Of course, there must yet be an accounting and adjustment of the equities.

The judgment is reversed.