JAMES P. ALLEN *vs.* FRED W. BARHOFF.

First Judicial District, Hartford, January Term, 1916.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A joint purchaser of property who is induced by the false representations of his associate as to the purchase-price to pay more than his share thereof, is entitled to recover the excess in an action

against the wrongdoer, without regard to the actual value of the property or whether it was worth as much as, or more than, the price falsely stated by the defendant.

One of several co-purchasers who conducts the negotiation in behalf of his colleagues is bound by this relation of agency to deal with them honestly and in good faith; and he will not be permitted by any concealment or misrepresentation to enrich himself at their expense.

Argued January 6th—decided March 15th, 1916.

ACTION to recover damages for alleged fraudulent representations, brought to and tried by the Superior Court in Hartford County, *Burpee, J.*, upon a demurrer to the complaint; the court sustained the demurrer and, upon the refusal of the plaintiff to amend his complaint, rendered judgment for the defendant, from which the plaintiff appealed. *Error and cause remanded.*

*William F. Henney*, for the appellant (plaintiff).

*Harry E. Back*, for the appellee (defendant).

RORABACK, J. The complaint now before us, although imperfectly drawn, states this case: In September, 1913, the plaintiff was a small stockholder in the Allyndale White Marble and Lime Company. This company had its office and principal place of business in the city of Hartford. At this time the defendant was vice-president, general-manager, and also a stockholder, of the Marble & Lime Company. For some time prior to September, 1913, one Halsey P. Philbrick was the owner of three hundred and fifty shares of the stock of the Marble & Lime Company. Philbrick was also the indorser of several promissory notes of the company aggregating about $28,000. These notes had been discounted and were held by various banks in the city of Hartford. In September,

1913, Philbrick stated to the defendant that he was anxious to be relieved of his liability on these notes, and that he would transfer his stock in the company to any one who would take his place on the indorsed notes and relieve him from liability thereon. About the same time the defendant represented to the plaintiff that Philbrick was anxious to be relieved of his liability as indorser, and then and there falsely represented to the plaintiff that Philbrick would sell his three hundred and fifty shares of stock in this corporation for $12,000, if the purchaser would also take his place as indorser on the notes and relieve him of liability thereon. At the same time the defendant further represented to the plaintiff that one George R. Ford had agreed to purchase eighty-five shares of this stock and pay $4,100 therefor, but would not assume any liability on account of Philbrick's notes. The defendant then proposed to the plaintiff that they should together procure the stock from Philbrick and relieve him from his liability by indorsing the bank notes, in place of Philbrick, and that they should take the $4,100 to be paid by Ford and each add thereto $3,950, making in all $12,000, which was to be paid to Philbrick for his stock, as the defendant represented. The plaintiff, believing these representations to be true and relying upon them, was induced to and did pay the defendant $3,950, and became jointly obligated with the defendant to pay the Philbrick notes; the defendant paid Philbrick nothing in cash for the transfer of Philbrick's stock, although he received $4,100 from Ford and the $3,950 of the plaintiff, to be paid to Philbrick. The defendant fraudulently concealed the true offer of Philbrick from the plaintiff, and the representations that $12,000 was asked by and paid to Philbrick were wholly false and fraudulent, as the defendant well knew, and these representations were

intended to and did cheat and defraud the plaintiff and cause him to pay $3,950 in cash and to become jointly obligated with the defendant, upon the Philbrick notes, for the transfer of his stock.

It is stated in the demurrer that it does not appear that the plaintiff has suffered any damage; that it appears that the plaintiff has received all the stock of the Allyndale White Marble and Lime Company which he bargained and paid for, and that it does not appear that the value of this stock was less than the consideration paid for it. It is directly alleged in the complaint that this transaction, as between the plaintiff and the defendant, was a joint enterprise.

If one joint purchaser conducting negotiations fraudulently misrepresents to another the purchase-price, so that such other pays more than his share, the person making the misrepresentations is liable. The same principle applies to representations as to the original cost of the property. 20 Cyc. 67, and cases cited in notes 23 and 24. It has been well stated that where persons' enter into a relation of trust and confidence with each other they "engage in a common enterprise for their mutual benefit, and have the right to demand and expect from their associates good faith in all that relates to their common interests. Equality and mutuality of burdens and benefits is implied in all such enterprises in proportion to the amounts subscribed, and no one of the subscribers can be permitted to take to himself a secret or separate advantage to the prejudice of his associates. If this be so as to a purchase made after the subscriptions are written, why should not the same rule be applied to a purchase made before? The wrong and breach of faith is just as great and every reason and authority showing that the rule should be applied in the one case would show that it should be applied in the other." *Getty* v. *Devlin,*

54 N. Y. 403, 412. This court, in the case of *Lowe* v. *Hendrick*, 86 Conn. 481, 485, 85 Atl. 795, said: "In this case the plaintiffs were led into the contract by fraudulent representations as to the price, and the cash payments required. Upon the facts as found, the purchase price was $12,500 instead of $18,000, as represented, and the plaintiffs were fraudulently induced to agree to pay in $4,000, and did pay in $3,250 of this, when their share of the true price under the contract was $1,250. The measure of damages in such case, where one joint purchaser is by fraud induced to pay the represented price for property which he subsequently ascertains is more than that in fact paid, is the difference between what he in fact paid and what he should have paid of the true price. It is immaterial in the assessment of damages that the property was in fact worth more than the true price, or as much, or more, than the represented price. The joint purchaser is entitled to the profit of his bargain, and cannot be deprived of that by the fraud of his co-purchaser."

There is another ground upon which the plaintiff, upon the facts alleged, can base his right to recover. It fairly appears from the facts stated in the complaint that the negotiations with Ford and Philbrick were conducted, and the arrangement in question was consummated, by the defendant when acting as agent for the plaintiff. In this relation it was the defendant's duty to account for the profits of the agency. By no concealment or misrepresentations could the defendant, as an agent, profit at the expense of the plaintiff. This relation was one of confidence, and the defendant was bound to keep to the straight line of good faith and fair dealing. *Rathbun* v. *McLay*, 76 Conn. 308, 56 Atl. 511.

Applying these principles of law to the present case,

it is apparent that the demurrer to the complaint was improperly sustained.

There is error, the judgment is set aside and the cause remanded to be proceeded with according to law.

In this opinion the other judges concurred.