### Powell v. Keene.

(Decided December 2, 1924.)

## Appeal from Greenup Circuit Court.

Equity—Specific Performance of Option Denied where Signature Obtained by Fraud.—Where defendant signed option because it had been signed by co-owner, after agreeing to sign if the co-owner did, but co-owner, by private agreement with optionee's agents, was to receive a further sum besides that indicated in option, which fact was not known to defendant, and was fraudulently withheld from him, court will deny specific performance under principle that "He who comes into equity must come with clean hands."

S. S. WILLIS and ALLAN D. COLE for appellant.

THOMAS E. NICKEL, E. E. FULLERTON, A. R. JOHNSON and HUNT, NORTHCUTT & BUSH for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Reversing.

Appellant, H. E. Powell, and Ollie Walker, Beecher Walker, Jessie Jacobs and Daisy Walker were the joint owners of a 94-acre tract of land in Greenup county, Kentucky. On May 18, 1922, by a written contract, for the recited consideration of $25.00, they granted to A. R. Johnson a 30-day option to purchase it for $10,000.00. H. E. Powell owned 5/11, Ollie Walker 3/11, and each of

the other three named 1/11 of it. The option was assigned by Johnson to appellee, J. O. Keene, and within the thirty days he elected to purchase. All of the owners save Powell executed deeds of conveyance. Within two or three days after its execution Powell notified Johnson that he would not be bound by the contract as it had been procured from him by fraud, and returned the $25.00 check given as the consideration for the execution of the option. Appellee, J. C. Keene, as plaintiff below, instituted an action in the Greenup circuit court to require appellant, H. E. Powell, to convey his interest in the tract of land pursuant to the terms of the written agreement. Appellant demurred generally to the petition, and by answer pleaded want of consideration and that his execution of the contract was procured by fraud, covin and misrepresentation. The court below adjudged a specific performance of the contract and required appellant for 5/11 of $10,000.00 to convey his interest in the land to appellee. This appeal is prosecuted from that judgment.

We will pass the question presented by appellant's general demurrer to the petition and that raised by the plea of no consideration as being immaterial, in view of our conclusions on the other questions. Appellant contends that his execution of the contract was procured by fraud. The facts, as disclosed by the record, are these: Appellee, Keene, personally, took no part in the negotiations leading to the purchase of the land. He instructed A. R. Johnson to purchase it for him. Johnson likewise had no personal connection with the transaction but acted in the matter through E. E. Fullerton, and Fullerton was assisted by R. H. Leslie. It appears that Fullerton and Leslie had some two or three conversations with appellant Powell before the option was executed and that in these conversations they were undertaking to get Powell, who owned the largest interest in the land, to make the deal for them with the other owners, and that Powell expressed his willingness to sell at $10,000.00 if the other owners would agree. It appears that in conversations between Powell and Ollie and Beecher Walker there was quite a difference of opinion as to the value of the tract of land and the price at which they should agree to sell it. In these conversations appellant Powell seems to have rather insisted that the farm be sold at $10,000.00. The joint owners do not

seem to have been able to agree as to the price, but it appears that they agreed among themselves to stand together and to sell at the same price and that Beecher Walker should do the trading for them.    Appellant Powell testified that in the last conversation had by him with Fullerton and Leslie before the option was signed by him he told them that he and Ollie and Beecher Walker had agreed to stand together and to take the same price and had agreed that Beecher Walker should do the trading for them.    He further testified that he told them he would not sign until they had procured Beecher's signature to the option and that he would take whatever Beecher would agree to take.    Fullerton's testimony does not agree with that of appellant on this question, and the effect of his testimony is that in the last conversation had with appellant he agreed with them that he would sell his interest, rating the farm at $10,-000.00, but would not sign the option until Beecher had signed, and agreed with them that if they could procure Beecher to sign the option he then would sign at $10,-000.00.    The testimony of Leslie, who was assisting Fullerton in the matter and who was introduced as a witness for appellee, Keene, and the other facts and circumstances surrounding the transaction corroborate appellant's version of the matter.    Leslie testified that at the close of the conversation had with appellant by him and Fullerton appellant said: ''Go and see the other boys; we all want the same for it.''    During that conversation, according to all the testimony, there was written into the blanks of the prepared option the names of the parties owning the farm and the price fixed at $10,000.00 and Fullerton and Leslie insisted that appellant sign it then but he declined to do so.    After leaving appellant Fullerton and Leslie went to see Beecher Walker and could not procure his signature to the option rating the property at $10,000.00.    He would not sell his 1/11 interest in the land for less than $1,500.00.    Fullerton and Leslie thereupon went to see Ollie Walker, who owned 3/11 of the tract of land, and told him that Beecher Walker would not sell his 1/11 for less than $1,500.00, and procured from him the agreement to sign the option rating the entire tract at $10,000.00, with the understanding that Beecher and the two girls, who owned 1/11 each, should be paid $1,500.00 for their interests, and Ollie thereupon signed the option.    Fullerton then took the option back to Beecher and he signed it and Fullerton gave him an

agreement on the side covering the $591.00 additional that Beecher should receive. Leslie was not present when Beecher signed, and after he signed the option Fullerton sent it by Leslie back to Powell for his signature. As presented to appellant by Leslie the option which had been signed by Beecher Walker rated the farm at $10,-000.00, and there was nothing in it to indicate that Beecher Walker had been given any more for his interest in the land than his *pro rata* part of the $10,000.00 set forth in the option. When it was presented to appellant he expressed surprise that Beecher had agreed to sell at that figure and asked Leslie about it. Leslie professed to know nothing more than the option showed by saying to appellant that he was not present when Beecher signed and did not know what he said. Appellant then remarked, "Well, I agreed to do whatever Beecher did and I will stand by my agreement," and thereupon signed the option. He learned that night from Beecher that he had received $1,500.00 for his interest, and then for the first time he knew the circumstances under which his signature to the contract had been procured. Immediately thereafter, he notified Johnson, to whom the option had been given, that he would not be bound by it because it had been procured from him by fraud.

This action was instituted in equity for a specific performance of the contract. In Darnell v. Alexander, 178 Ky. 404, relative to the equitable remedy for specific performance, we said:

"No rule in equity is more deeply rooted in the law than the one that a specific performance of a contract is not granted as a mater of right, but it is always addressed to the sound and reasonable discretion of the court to be exercised according to the circumstances of each case. This discretion, however, is not an arbitrary or capricious one, but is a sound judicial discretion to be exercised according to the principles of equity. 36 Cyc. 548-9; Pomeroy's Equity Jurisprudence, section 1405, 2 Story's Equity, sections 769 and 742; Bowman v. Irons, 2 Bibb 78; Petty v. Roberts, 7 Bush 410; Cocanougher v. Green, 93 Ky. 519; Woolums v. Horseley, idem 582; Williamson v. Dills, 114 Ky. 962, and Heydrick v. Dickey, 155 Ky. 222." (See also L. & E. Ry. Co. v. Williams and Wife, 183 Ky. 343; Jenkins v. Dawes, 183 Ky. 25; Cornett v. Kentucky River Coal

Co., 175 Ky. 718; Bluegrass Realty Co. v. Shelton, 148 Ky. 666; Clifton Land Co. v. Reister, 186 Ky. 155.)

We are of opinion that the evidence herein clearly establishes that in the last conversation had with appellant before the option was presented to him for his signature there was an understanding between him and appellee's agents that appellant would grant the option to purchase the farm rating it at whatever price Beecher Walker would be willing to take. That being true, it inevitably follows that, when appellant's agents returned with the option signed by Beecher Walker which falsely showed that Walker had agreed to sell at a price less than that for which he actually did agree to sell it, and in response to appellant's inquiry about it they suppressed the facts and led appellant to believe that Beecher had been paid only his *pro rata* part of the $10,-000.00 set forth in the option, they thereby procured his signature to the option contract by fraud. No maxim of equity is older and more venerated by courts of equity than "He who comes into equity must come with clean hands." That maxim has uniformly been applied and courts of equity uniformly have refused equitable relief where one seeks to enforce a contract when to do so would enable him to profit by his own inequitable conduct. We are of opinion that the facts of this case clearly bring it within the rule above.

Judgment reversed and cause remanded with directions that the petition be dismissed.