## Campbell et al. v. Snyder.

Sept. 30, 1941.

Rodes & Willock and John B. Rodes for appellants.

J. E. Wise for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

In June, 1937, the appellants, J. B. McLellan and Wade Campbell, a partnership doing business in the firm name of McLellan and Campbell, contracted with the State Highway Department of Kentucky to construct a state highway known as 31-W from Cave City to a point near Munfordville, Kentucky, a distance of approximately ten miles. Appellants sublet all the excavation work to appellee, Frank J. Snyder, at certain prices per cubic yard, and appellee entered upon the work about July 10, 1937, and did the major portion of it by about October 1, 1937, and then left the work without completing it and moved all his machinery and working force to another job in Nelson County, Kentucky. About December 1, 1937, the State Highway Department ordered all road construction work stopped until spring or about April 1, 1938. Soon thereafter appellants, claiming that the State Highway Department was urging them to complete the job under their contract which provided for a liquidated penalty in a specified sum for each day after a fixed time, and appellee having failed to return to the job and complete it according to his contract with appellants, they (appellants) entered upon the job contracted to appellee and finished it according to the specifications of their contract with the Highway Department and which appellee had contracted with them to do.

The work was completed to the satisfaction of the Highway Department in July, 1938, and accepted, and appellants were paid their contract price by the Highway Department and they, appellants, then paid appellee the sum of $15,580.27 under the contract between them and appellee.

598

Appellee, contending that appellants had not paid him the full contract price for the work done by him, brought this action against appellants claiming that the work done by him under his contract with appellants amounted to $19,393.22, leaving a balance of $3,811.95 yet due him by appellants which they had failed and refused to pay, and sought judgment against them for that sum.

Appellants filed their answer and counterclaim by the first paragraph of which they categorically denied all material allegations of the petition and by various succeeding paragraphs they set out their counterclaim alleging that appellee had breached his contract and failed and refused to comply therewith according to the terms thereof, and that by reason thereof they were compelled to and did enter upon the work contracted to appellee and completed same according to their contract with the Highway Department which required them to have the work completed within a specified time, and upon failing to do so they were required by the terms of their contract with the Highway Department to pay a liquidated penalty of $25 per day for any delinquency.

Appellants set out in detail in their counterclaim the amount of work they were required to do in the completion of appellee's work as required by the contract, including the amount of excavation, blasting rock, widening ditches, amount of material used, the number of men employed and wages paid to them, and the use of their steam shovel and motor trucks and the fair rental value for the same, aggregating the sum of $5,604.85. Appellants admit, however, that they failed to prove some of the items set out in their counterclaim but they insist that their evidence shows that they are entitled to recover thereon the total sum of $5,368.65.

By reply, amended answer and other subsequent pleadings and orders, the issues were made and the case was transferred to the equity docket and referred to the Master Commissioner. The evidence was taken in open court in the presence of the Commissioner and the court and after the evidence was transcribed by the court stenographer the Commissioner took the case under consideration and made his finding and report to the court.

The Commissioner found that appellee's evidence was insufficient to prove certain items of his claim ag-

gregating the sum of $173.72 and deducted the further sum of $135 for excavation at a point in the road referred to in the record as the ''triangle'' which was included in appellee's contract, and made a further deduction of $1,267.71 for other excavation aggregating a total sum of $1,576.33 and deducted this sum from appellee's claim of $3,811.95, leaving a balance of $2,235.62 due appellee and recommended judgment for that sum.

Both parties filed exceptions to the Commissioner's report and upon consideration of the exceptions the court overruled all exceptions and entered judgment in favor of appellee as recommended by the Commissioner. The appellants have appealed, insisting that they should recover the full amount of their counterclaim proven by the evidence, namely, $5,368.65, and appellee has cross-appealed, insisting that the court erred in allowing appellants any sum on their counterclaim.

Appellee testified that he performed all the duties, as nearly as possible, required by his contract with appellants before he left the job in October, 1937. He said that Mr. McLellan was on the job every day and that he, appellee, was there quite frequently and that he and Mr. McLellan both watched the dirt and tried to get it balanced so they would have it where it belonged.

Appellee was asked about specific items charged in appellants' counterclaim and testified that he had given appellants credit for dynamite, caps, etc., aggregating the sum of $241.25 which was included in appellants' counterclaim. He further said that he sloped every cut on the job and the highway engineer representing the Highway Department was in charge and was satisfied with the slopes when they finished. He also testified that when the engineer saw anything wrong he would tell appellee's foreman about it and they would go back and do the work to the satisfaction of the engineer. In reference to the charge in the counterclaim that appellee left excess dirt on the grade, he said that in February, 1938, he went to see Mr. McLellan and told him that if there was too much dirt left that he would send a tractor and slip grader down and move it when he, McLellan, got ready to finally dress the job if he would notify him, and Mr. McLellan told him that he would notify him and that if he had received notice from Mr. McLellan he would have returned to the job and finished it. He further stated that he received no such notice and

that appellants entered upon the job and performed the work claimed to have been done by them without giving him any notice at all that they were ready for him to return to the job or give to him an opportunity to finish it. He said he could have finished the work according to his contract for four or five hundred dollars.

In addition to appellee's evidence, he introduced as witnesses G. H. Montgomery, Roy Crumes and Luther Richardson, all employees of appellee who worked for him on the job in 1937. Their evidence is along the same line as that of appellee and tends to corroborate him. According to all the evidence introduced for appellee it appears that there was only a meager portion of the work left undone when appellee left the job in October, 1937.

Also, appellee took the deposition of Dewey Sparks, who was the State Highway engineer in charge of the road construction work in question. According to Sparks's evidence there was more unfinished work left than that claimed by appellee and his employee witnesses, which could not have been done for four or five hundred dollars as claimed by appellee. On the other hand, however, the unfinished work was considerably less than represented by appellants and their witnesses. But it appears to us that Sparks's evidence as a whole was more favorable to appellee than it was to the appellants.

Appellant Campbell testified that after Snyder had quit the job he, Campbell, went upon the road and found some dirt in the cuts on each side and that there was some blasting done in the ditches; that in 1938 they, appellants, had to take dirt out of the cuts and get the ditches down and take out some rock in order to make the grade according to plans, and that they used a steam shovel and tractor in doing this work. It appears that McLelland had charge of finishing the work in 1938 and was more famliiar with the details with respect to the work done and cost thereof than Mr. Campbell.

Appellant McLellan testified in detail with reference to the unfinished condition of appellee's work, and according to his evidence a substantial amount of the work remained undone by appellee when he left the job in 1937, which appellants finished in 1938. Without detailing Mr. McLellan's evidence it is sufficient to say that

his evidence tends to show that a substantial amount of appellee's work remained undone when he left it in October, 1937, and that appellants completed the work at a substantial cost to them, namely, in excess of $5,300.

In addition to the evidence of appellants, they introduced seven of their employees who performed the uncompleted work of appellee in the spring and summer of 1938. The evidence of these employees tends to corroborate the evidence of Mr. McLellan, thus presenting a conflict in the evidence as to the amount of work remaining undone by appellee when he left the job in 1937. It is thus seen that if the evidence for appellants is to be believed, they are entitled to recover on their counterclaim a considerably larger sum than that allowed by the Commissioner and confirmed by the Chancellor. On the other hand, if the evidence of appellee is to be believed as to the amount of work necessary to be done in the completion of appellee's job, the sum allowed on the counterclaim is sufficient.

Appellants stress the fact that their evidence in respect to the sum it cost them to finish appellee's job is uncontradicted. Conceding that to be true, yet it must not be overlooked that according to the evidence of appellee and his witnesses with reference to the unfinished portion of the work to be done, the enormous sum spent by appellants in completing the work was unnecessary. This does not militate against the rule contended for by appellants that the measure of damages for breach of contract is the reasonable and necessary cost of completing the work according to the terms of the contract. Hence, appellants are entitled to recover on their counterclaim not what they may have seen cause to expend in completing appellee's work, but to recover only what was reasonably necessary for them to expend to complete the work. Appellants contend that the sum they spent was necessary, but if there was no more unfinished work left to be done by appellee than that shown by his evidence and his other witnesses, it is indeed doubtful that the enormous sum spent by appellants was necessary. Thus, the conflict in the evidence lies not in what appellants actually spent in the completion of the work but rather whether or not it was necessary for them to spend that sum.

It appears from the undisputed evidence that in February, 1938, appellee and the appellant McLellan

had a conversation concerning the work and they both recognized that appellee's work was in a more or less uncompleted condition and appellee told appellant that he would return to the work and finish it when appellant so desired, and he asked appellant to notify him when he wanted the work finished and appellant told him that he would give him such notice. Appellant does not deny this agreement and said he wrote appellee a letter notifying him to return to the work and finish it. Appellee denied having received the letter and since there is no evidence that he did receive it, except the mailing of it which merely raised a presumption that he received it, which presumption was completely overcome by appellee's positive evidence that he did not receive it. H. C. Whitmer Co. v. McClung et al., 247 Ky. 625, 57 S. W. (2d) 648.

It is argued for appellants, however, that it is not material whether appellee received the notice, since he knew the work was unfinished and it was his duty to perform the work according to the contract. We would be inclined to agree with appellants in this contention but for the specific agreement and understanding between the parties in February, 1938, that appellants would notify appellee when they desired the work finished, but instead of making any effort to notify appellee other than the mere mailing of a letter, they entered upon the work and finished it themselves.

Appellants base their counterclaim upon breach of contract, but in view of the evidence and all circumstances we do not think that there was any intentional breach of the contract by appellee in the usual sense or meaning of that term. The evidence tends to show that appellee left the work temporarily but with the intention of returning and finishing it at a time desired by appellants. It is not shown that he had such understanding with appellants in October, 1937, at the time he left the work, but the agreement and understanding had between the parties in February, 1938, in regard to notice and other discussions of the work, show very clearly that appellee had not permanently abandoned the work, or that he had or would refuse to complete it. It appears that the Commissioner and the Chancellor took these facts and circumstances into consideration and were of the opinion that appellee should have been notified by appellants when they desired him to finish the

work and had they done so appellee could or might have completed the work at considerably less cost than that expended by appellants in doing the work for appellee.

Appellants insist that appellee knew that the work was unfinished and whether or not he received the alleged letter, since he lived in Elizabethtown, which was only about one hour's drive from the work, he could have called on appellants in person or by telephone and inquired of them when they were ready for him to finish the work, and in failing to do so he manifested an obvious indifference to his duties and obligations under the contract. It may be true that appellee was not as alert as he might have been in informing himself as to the time appellants desired the work finished, but on the other hand it might be said that after appellee did not respond to appellants alleged letter within a reasonable time nor return to the work, it was likewise the duty of appellants to call appellee on the telephone or drive to Elizabethtown to see him in person. In these respects the parties were equally at fault.

It is a well established rule that this court will not disturb a finding of fact made by a Commissioner and approved by the Chancellor unless we are clearly convinced from the evidence that error has been committed. Congleton Lumber Company et al. v. Watkins et al., 282 Ky. 805, 140 S. W. (2d) 372; Gay v. Hardman, 276 Ky. 624, 124 S. W. (2d) 1048. In such conflict of evidence we are unable to say that we are clearly convinced that any substantial error has been committed.

For the reasons stated the judgment is affirmed on both the appeal and the cross-appeal.

The whole court sitting.