### Jones v. Nickell et al.

March 21, 1944.

Robert H. Winn and Gardner & Gardner for appellant.

Nickell and Nickell for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellant, Custer Jones, brought this equity action against Everett Nickell and Lona D. Nickell to recover $1,500 alleged to be due him under a partnership agreement between him and Everett Nickell. He alleged, in substance, that by the terms of the agreement he and Nickell were to purchase the office building known as the Lynn B. Wells Building in West Liberty, Kentucky, for $12,000, each to pay one-half, or $6,000. In order to enable Nickell to pay his one-half of the purchase price, Jones was to lend him $2,000, the loan to be secured by a mortgage on Nickell's one-half interest in the property.

The property was to be conveyed to Jones and Nickell or to Jones and Nickell's wife, Lona D. Nickell, equally and jointly, and the deed was to be executed on Tuesday morning, March 16, 1943. Lynn B. Wells had agreed to sell the property for $12,000. He further alleged that in violation of the agreement Nickell, on March 15, 1943, had the property conveyed to his wife, Lona D. Nickell, and on the same day sold and conveyed it to Earl May for $14,000, though the property was worth $15,000. The petition contained an affidavit for an attachment, and the Commercial Bank of West Liberty was made a garnishee defendant. In an amended petition the plaintiff alleged that the Wells property was to be conveyed to him and Everett Nickell and was to be jointly owned, occupied, used, rented, enjoyed or disposed of by them as partners. The profit to which the plaintiff was entitled was fixed at $767.50, plus $500 damages because Nickell sold the property for $1,000 less than its value. The defendants filed a motion to require the plaintiff to elect whether he would prosecute the action for damages or to recover his alleged share of the profits growing out of the transaction set out in his petition, and the motion was sustained. The plaintiff elected to maintain the action for his share of the profits, and though he objected at the time to the court's ruling is not now pressing that point. He filed a second amended petition in which he alleged that "the contract entered into between plaintiff and defendant was and is in nature a joint adventure agreement, governed by the rules and incidents of a partnership, for the purpose of jointly and equally purchasing, owning, renting, enjoying and disposing of the property above named for the mutual and equal benefit and liability of the plaintiff and defendant, Everett Nickell." He prayed judgment against the defendants in the sum of $764.92, one-half of the profits realized by Everett Nickell in the purchase and sale of the property. This amount was arrived at in the following manner: Amount received by Nickell from purchaser, $14,000; rents received by Nickell, $50; total $14,050. Nickell paid $12,000 for the building, $500 to Clifford Elam for the purpose hereinafter stated, and $20.15 expenses incident to execution of deed, leaving profit collected by him $1,529.85. The Nickells answered admitting the sale of the property by them for $14,000, but denying the averments of the petition as to the joint purchase agreement and pleading the statute of frauds as against the oral contract set forth in the petition. Upon submission of

the case the court dismissed the petition as amended, and discharged the attachment which had been levied. The court evidently was of the opinion that the statute of frauds was applicable since the evidence overwhelmingly supported appellant's theory of the case.

Appellees insist that no such contract as claimed by appellant was made, and, even if it be conceded that such a contract did exist, his action is barred by the statute of frauds. Whether or not the statute of frauds applies depends upon the nature of the relationship created by the contract. Was it a partnership or joint adventure, or was it merely a joint tenancy? A joint adventure is a special or limited partnership or partnership for a special purpose. Ordinarily it is an association for a particular transaction, while a partnership contemplates a continuing business. Caskey v. Bradley, 292 Ky. 789, 168, S. W. (2d) 36; Pawley v. Glasscock, 236 Ky. 821, 34 S. W. (2d) 729. It is not material to determine whether the transaction in question constituted a partnership between appellant and appellee Nickell or a joint adventure, since in either event it is governed by the same principles of law. Manning v. Owens, 277 Ky. 40, 125 S. W. (2d) 753; Central Trust Company v. Creel, 184 Ky. 114, 211 S. W. 421. Clearly it is one or the other. According to the pleadings and proof of appellant, the property to be purchased was to be used, occupied, rented or disposed of by appellant and Nickell as partners, and the profits or losses were to be divided equally. The principal motive behind the agreement was the possibility of a sale for profit. Appellees cite Clark v. Sidway, 147 U. S. 682, 12 S. Ct. 327, 38 L. Ed. 1157, in support of their contention that under the facts of the present case Jones and Nickell were neither partners nor joint adventurers but merely tenants in common. What was said in Spencer v. Jones, 92 Tex. 516, 50 S. W. 118, 119, 71 Am. St. Rep. 870, in distinguishing Clark v. Sidway, is pertinent here:

"It is claimed that the case cited holds that no partnership can exist in a single transaction of purchasing land with a view of selling it for profit. In the case cited the court does not hold that a partnership may not exist in one transaction, but simply holds that in that one transaction there was no partnership. The authorities are abundant to the effect that a partnership may, according to the intention of the parties, be formed for the purpose of one transaction alone in real estate; that

is, the buying of one tract or more of land at the same time, and selling them for profit.''

Many courts, if not the majority, follow the rule that an oral agreement merely for the joint purchase of land involving no element of partnership falls within the ban of the statute of frauds, but the general rule is that a parol partnership agreement or a parol agreement for joint adventure for the purpose of dealing in real estate is not in violation of the statute of frauds. The rule, as stated in 49 Am. Jur., Statute of Frauds, Sec. 220, is:

''* * * according to the great weight of authority, a parol partnership agreement or joint enterprise entered into by two or more persons for the express purpose of carrying on the business of purchasing and selling real estate, or interests therein, for speculation, the profits to be divided among the parties, is not within the provisions of the statute of frauds relating to the sale of land or an interest in lands. In other words, such an agreement may be entered into, become effectual, and be enforced although not in writing.''

This court is committed to that rule. Stewart v. Stovall, 191 Ky. 508, 230 S. W. 929; Garth v. Davis & Johnson, 120 Ky. 106, 85 S. W. 692, 117 Am. St. Rep. 571.

The testimony of the appellee Everett Nickell that he did not enter into an agreement with Jones to purchase the Wells property together is unconvincing and is not supported. He admits that he had several conferences with Jones relating to the purchase of the property, but he stated they concerned a loan from Jones and that the final agreement was that Jones was to lend him $8,000. Jones testified that Wells had offered to sell his property for $12,000, and that he and Nickell had several conversations concerning its purchase. On Friday, March 12, 1943, they agreed to purchase the property jointly, each to have a one-half interest, and Jones was to lend Nickell $2,000 to enable him to pay his one-half of the purchase price. Wells had agreed to take a house and lot owned by Nickell at a valuation of $4,000. The title to the house and lot was in Mrs. Nickell. The transaction was to be consummated on Tuesday morning, March 16, and the property was to be conveyed to Jones and Lona D. Nickell. Everett Nickell wanted the title in his wife's name since he was afraid his judgment creditors would

have executions levied on his interest. Lynn B. Wells, seller of the property, testified that Everett Nickell told him that Custer Jones had a one-half interest in the property, and directed him to make the deed to Custer Jones and Lona D. Nickell. Wells had the deed prepared and dated it March 12. On March 15, Nickell directed him to make the deed to Lona D. Nickell. Wells informed him that the deed had been prepared, and Nickell told him to scratch out the name of Custer Jones, which Wells did with a pen. The deed was executed and was lodged for record on March 15, though the notary's certificate shows that it was acknowledged on March 16. Nickell told Wells that he wanted to close the transaction before Custer Jones, who was out of the county, returned to West Liberty. After Nickell directed Wells to convey the property to Jones and Mrs. Nickell and before he directed him to strike Jones' name from the deed, he sold the property to Earl May for $13,150. Later in the day he sold it to Homer and Clifford Elam for $13,750. May learned of this transaction, located Nickell, and again bought the property for $14,000. It seems that a dispute then arose with the Elams, and Nickell settled their claim by paying them $500. Nickell, whether a partner or coadventurer, violated the obligations of fidelity and fair dealing incumbent upon him under the circumstances. ''The relationship between joint adventurers, like that existing between partners, is fiduciary in character, and imposes upon all the participants the obligation of loyalty to the joint concern and of the utmost good faith, fairness, and honesty in their dealings with each other with respect to matters pertaining to the enterprise.'' 30 Am. Jur., Joint Adventures, Sec. 34.

The evidence overwhelmingly supports Jones' version of the transaction, and the judgment is reversed, with directions to enter a judgment for the plaintiff for $764.92 and to reinstate the order of attachment.