## Stephens v. Stephens.

June 2, 1944.

As Modified on Rehearing Nov. 24, 1944.

J. W. Howard for appellant.

Joe Hobson for appellee.

Opinion of the Court by Stanley, Commissioner—Reversing.

The suit is to settle the accounts of a partnership or joint adventure, the parties not agreeing upon the classification. The distinction in this particular case is not important, as it involves only the adjustment of accounts between the two parties. See Jones v. Nickell, 297 Ky. 81, 179 S. W. 2d 195.

In the summer of 1937, the appellant, Claude P. Stephens, a lawyer, joined with his cousin, the appellee, D. C. Stephens, for the purpose of acquiring and developing oil and gas leases. The appellee had had experience in that field, but it was not his principal business. It was understood that the appellant should procure the leases and contracts for the sale of the pro-

duction and furnish half the money. The appellee owned, ostensibly or actually, a drilling rig and was the active and operating partner. Three wells were drilled, two of them yielding production, but the venture proved unprofitable. The operations and accounts were so indefinitely and incompletely handled by D. C. Stephens that there was indeed a tangled web to be unwound when settlement was undertaken. Much of this appears to be due to failure of the appellee to keep accurate records and to some intermingling of operations. It is not surprising under the rather free and loose way in which the joint affairs were entered upon and conducted that differences should arise and that the evidence should be unsatisfactory and uncertain. A record of over 1000 pages was built up, and upon it a Special Commissioner made a full detailed report. His net finding was that the appellant, Claude P. Stephens, was indebted to the appellee, D. C. Stephens, in the sum of $3,583.37. Honorable J. B. Hannah served as a Special Judge. Upon the trial of exceptions filed by both parties to the Commissioner's report he sustained his findings except that he held that D. C. Stephens should be allowed credit for $1718.57, which we shall describe.

The court found that D. C. Stephens had contributed $5,404.56 more than C. P. Stephens, and that one-half of that sum was chargeable against the latter, namely, $2,702.28, for which a judgment rendered. The court construed the relationship as a partnership and ordered its dissolution and the sale of its property, which consisted of an oil and gas lease. C. P. Stephens prosecutes an appeal from the judgment against him, and D. C. Stephens has been granted a cross-appeal, in which he insists that he is entitled to a judgment for $4,459.22 against the appellant.

To give even a summary of the evidence and the arguments would extend the opinion beyond reasonable bounds and be of no value as a precedent. Notwithstanding the two-fold sifting of the respective claims there are many items still in dispute. We have considered all of them. Except as we shall discuss, they rest upon contradictory testimony and we are not convinced that the findings of fact by the chancellor are erroneous in respect to them. In such situation, this court will not disturb the decisions. Campbell v. Snyder, 287 Ky. 596, 154 S. W. 2d 724.

The engagement between the parties was oral. D. C. Stephens had bought a drilling rig, but the title to it was in his brother, Jerry Stephens. Claude P. Stephens, the appellant, knew this. He maintains and the trial court found in effect, that it was agreed that the appellee should not receive any compensation for the use of the rig. That was part of his contribution to the partnership or venture. But it was held proper to charge the firm with ordinary repairs and replacement of parts broken or worn out in the operation. The allowance and disallowance of a number of items of account rest upon this finding. We concur in that conclusion and in the decisions of the Commissioner and the Judge with respect to those items.

About the time the drilling of the first well began, the appellee submitted to the appellant the draft of a contract between the firm and Jerry Stephens calling for the drilling by him as a contractor at the price of $2.25 per lineal foot, and also the payment of $25 for each 12 hours of additional or extra work. The testimony is conflicting as to how carefully the appellant examined this contract, but he did inquire if that was about the right price, and when told that it was the usual one he signed the instrument. The appellant testifies that he considered it a matter of form and in line with the partnership agreement. He was impressed with the fact that it did not provide for any payment to D. C. Stephens for the use of the rig, which he knew did not belong to Jerry. He relied upon the appellee to make a proper accounting and adjustment. At any rate, it cannot be denied that as a matter of law the appellant is bound by the terms of this contract unless back of it there was some deceit or something else that would relieve him, or unless afterward his rights were changed by some act on the part of D. C. Stephens which was in violation of his duty as a partner. The fact is that the contract with Jerry was not executed. Apparently unknown to the appellant, the appellee bought all of Jerry's interest in his tools, etc., and in this contract. It was later formally assigned to D. C. Stephens. Jerry was paid wages out of the partnership fund of $35 a week for two weeks, and afterward $20 a week, under an agreement with D. C. Stephens that he would assign him a 1-16 interest in the well. Other expenses were also charged up to the partnership. In the settlement of account submitted to the appellant, he was called upon

to pay one-half the cost of the first well at the rate of $2.25 a foot, the total of which was $3,480, and $25 a day for the additional use of the drilling rig and extra work in cleaning and pumping out the well.

The appellant has maintained that this contract with Jerry was but a scheme to avoid the appellee's agreement not to charge anything for the use of the rig. It appears that the appellant knew nothing about the side agreement or contract with Jerry or of the assignment of the drilling contract until a settlement of accounts was undertaken. He did know that Jerry was being paid weekly wages. The transaction smacks of bad faith. There is evidence that the $2.25 a foot was a fair and reasonable price for the drilling of a well at that time and place, but other evidence that such sum was excessive. The appellee admits that his records show a profit for himself of $213 in this transaction, but insists that this was more than covered by his being required to assign a 1-16 interest in the leases since the appellant had refused to make an assignment of any part of his interest.

The relationship of partners is a close one and imposes upon each the obligation of loyalty, integrity and the utmost good faith and fairness with respect to partnership affairs. This obligation begins with the preliminary negotiations and continues throughout the life of the relationship. George v. Sohn's Adm'r, 191 Ky. 428, 230 S. W. 904; Jones v. Nickell, 297 Ky. 81, 179 S. W. 2d 195. No undue advantage of one over another by misrepresentation or concealment will receive the approval of the law. A court of equity will always grant relief to the partner who has suffered from a breach of the obligation. One partner will not be permitted to obtain secretly any right that should belong to the partnership and put it to his own individual profit. Of such character is the securing of a contract. The criterion is not an actual evil motive, for the courts look to the result of any such action regardless of evil intent. If such action results in profit or advantage, the courts will require an accounting. Deavenport v. Green River Deposit Bank, 138 Ky. 352, 128 S. W. 88, 137 Am. St. Rep. 386; Axton v. Kentucky Bottlers' Supply Co., 159 Ky. 51, 166 S. W. 776, Ann. Cas. 1915 D, 74; Rankin v. Kelly, 163 Ky. 463, 173 S. W. 1151; Jones v. Jones, 254 Ky. 475, 71 S. W. 2d 999; Jones v. Nickell, supra. The Commissioner and the

Judge both recognized this principle, but the former found that $2.25 a foot was a fair and reasonable charge for drilling the well and that the appellee had derived no benefit from the transaction. The Judge, however, found that the actual cost to the partnership of the services covered by the terms of the contract with Jerry Stephens, that is, the sum paid out by D. C. Stephens as operating partner, was much less and that he should be credited only with $1,718.57 on this account instead of $3,480.75. This item being adverse to the appellee is presented in a cross-appeal as an error in the judgment. We think it was the limit of a proper allowance. However, there is an item resting upon the same basis which the appellant claims is error against him.

The appellee claimed credit for the use of the drilling rig in addition to drilling the well. The Commissioner and the court allowed the appellee $25 a day for 65 days for extra and additional work and the use of the machinery in cleaning and pumping out the well as provided in the contract with Jerry Stephens, subsequently assigned to the appellee. There appears another charge against the firm for the use of tools for five days at $25 a day, $125, but we cannot tell whether this is of the same character. If it is, then, of course, that should be treated likewise. If the contract with Jerry Stephens was properly disregarded as it pertained to the drilling of the well, it follows that it should have been disregarded for all purposes. The allowance of $1625, or $1750, as the case may be, on this account was improper. It appears that the expenses incurred for labor and repairs to the rig were included in the account.

The accounts of the partnership were loosely and crudely kept. As D. C. Stephens had conducted the affairs and kept the accounts, he had the burden of showing the correctness and fairness of the charges and claims he made. Moore v. Malis, 292 Ky. 106, 166 S. W. 2d 52.

The manner of handling notes for money borrowed from a bank at Kenova, W. Va., $3,000, a bank at Pikeville, $3,500, and from one Hall, $500, a total of $7,000, is confusing. Proper bookkeeping would have cleared such items by reciprocal debits and credits where the money was used in operations and the notes paid out of income. It appears some other borrowings were thus handled. As to the three items, the record has only a

statement of account submitted by D. C. Stephens which lists payments made by him for all purposes and includes these notes and interest. This shows aggregate payments of $3,162.22 on the Kenova note, of $535 on the Hall note, but only $1,698.21 on the Pikeville note. The total of all payments being divided by half, the result is that the appellee charged the appellant with only $2,697.71 on account of these notes. The statement of account then shows "credits on C. P. Stephens account" of an aggregate of $3,500 on account of the three notes, which is one-half the principal. But he is also credited with $807.30 as one-half the proceeds of gas sales to the Kentucky-West Virginia Company, and with $900 paid on an execution issued against both men in favor of a bank at Ceredo, W. Va., for $1,852.99, all of which execution had been satisfied by C. P. Stephens. There is frequent reference in the testimony to the note of the "Ceredo" bank which is incomprehensible, except upon the assumption that this is the same as the Kenova note. But the account stated shows the Kenova note was paid in full by D. C. Stephens. On the other hand the account shows that only $1,500 was paid to the Pikeville bank by him, yet both parties agree that it was paid in full, the testimony showing that the balance was paid by the assignment of certain production proceeds. This may have been in part the gas sales of $1614.30 to the Kentucky-West Virginia Gas Company. If so, the item appears out of place as a credit on account, with no corresponding entry on the other side of the ledger. The report of the special commissioner follows the same plan of accounting and uses the same figures and form that the appellee used in his statement of account. Thus, the account shows an allowance of too much credit to the appellant. Yet neither party claims that he has received too much. The vigorous argument and analysis of the situation by the appellant is that he is entitled to be allowed in the settlement to an additional credit of $1194.39.

We have spent much time in an effort to reconcile these accounts, but it has been in vain. We are, therefore, confronted with a situation where the parties have not proved their case clearly and where a competent commissioner and an able, painstaking judge arrived at a result which we are not able to say is erroneous. We must, therefore, and do accept the judgment in this respect as correct.

The judgment has the effect of allowing D. C. Stephens credit for $435 on account of some 8-inch casing. It appears that there was some casing of that size, used temporarily in two of the wells of the partnership, but it was taken out and 6-inch casing substituted for it. The 8-inch casing seems to have ultimately gone in wells owned and operated by D. C. Stephens individually. We are of opinion that the evidence did not warrant this credit in the partnership accounting. Allowing the appellant, C. P. Stephens, credit for one-half, namely $217.50, will adjust the matter, and upon modification of the judgment that should be allowed.

Again referring to the cross-appeal, we think the appellee should be allowed to charge $150 against the firm for part of the services of his bookkeeper. There is no dispute as to the amount but the contention by appellant that it should not be allowed as there was no added expense because of the partnership affairs. Keeping these records was part of the bookkeeper's duties and the partnership should pay for the services.

The judgment is reversed on the direct and cross-appeals that it may be modified by allowing the appellent and the appellee the credits above stated.