## Greenup et al. v. Hewett.

January 16, 1951.

R. C. Tartar, Judge.

James H. Hicks and L. C. Lawrence for appellants.

Flowers & Pritchard, Duncan & Duncan, for appellee.

JUDGE HELM—Affirming.

On May 7, 1946, appellants, A. G. Greenup and Stanley H. Vegors entered into a written contract, and on August 6, 1946, entered into a written supplementary contract with appellee, Clyde G. Hewett, for purchasing and leasing lands and the drilling of oil wells in Clinton County. By these contracts appellee, Clyde G. Hewett, of Sault Ste. Marie, Michigan, agreed to and did, between May 7, 1946 and November 20, 1946, advance $148,000 for these purposes. Appellants were engaged in buying and leasing lands and drilling oil wells in Clinton County. They were carrying on operations in the name of A. G. Greenup, Greenup and Vegors, and Greenup, Vegors and Beacom. The sums received from appellee, except $33,000 paid directly to Whitton and Sapp, were deposited in the name of appellant Greenup. It was agreed by the parties that appellants would render an accurate accounting to appellee at anytime he desired of how any and all money or property received by them under the agreements had been expended.

This suit was filed by appellee against appellants asking for an accurate accounting showing the expenditure of the amounts advanced by appellee, and seeking to recover of them the sum of $44,505.43 which appellee

claims was misappropriated and used by appellants in the development of their own properties, and not in the development of the Hewett, Greenup and Vegors properties. The action was referred to a special commissioner, Honorable Walter Flippin, of Somerset, to hear proof and report to the court. He heard proof and made reports, to which appellants and appellee filed exceptions. The court sustained appellee's exceptions 1 to 10, overruled appellants' exceptions, and entered judgment against appellants for $22,893.95. Appellants appeal.

The original contract provided: "That for and in consideration of the sum of Fifty Thousand ($50,000.00) Dollars which is to be deposited to the bank account of A. G. Greenup in the Bank of Cumberland, Burkesville, Kentucky, within 30 days from the date of this assignment, the party of the first part, A. G. Greenup, hereby grants, bargains, sells, transfers, assigns and conveys unto the second party, Clyde Hewett, an undivided one-half (½) interest and to the second party, Stanley H. Vegors, an undivided one-fourth (¼) interest in and to the following described oil and gas leases, to-wit: * * *"

The eight leases described were in Clinton County. It was agreed that in all leases acquired by Greenup in Clinton County in the future, appellee was to be the owner, assignee and transferee of an undivided one-half interest and Vegors of an undivided one-fourth interest until the $50,000 had been expended in acquiring leases, drilling and equipping wells. Hewett was to be "paid back" $50,000 in oil runs before Greenup and Vegors were to be paid anything.

It was agreed that as to the leases to be acquired in the future, the location of wells to be drilled, and the assignment of leases, was to be left to Greenup. By the supplementary contract, appellants agreed to deliver to Hewett a one-half undivided interest in a 17-acre lease by Burchett and others. The parties agreed to supervise the drilling and equipping, if necessary, of nine named oil wells, and Hewett agreed, in consideration of the assignments set out in the original and supplementary agreements, to furnish $148,000, $128,000 of which "had been paid in cash," the balance by a note for $20,000.

It was stipulated that since May 7, 1946, four named

tracts of land "had been leased in the name of A. G. Greenup and Clyde Hewett, and he therefore becomes the owner of an undivided one-half interest in these leases." It was said: "It is the purpose of this agreement to limit the joint operations of all parties concerned to the specific lands described in the original agreement of the seventh day of May, 1946, and lands and wells mentioned in the supplementary agreement. This has no relation to any leases or operations owned by either of the parties as individuals or as joint operators with others, and it is not the intention of either of the parties hereto to form a partnership."

It was provided that the $148,000 was to be expended in carrying on the operations mentioned in the original and supplementary agreements.

The Commissioner heard the testimony of Greenup as if under cross-examination; the testimony of Clyde G. Hewett and Grant Hewett for appellee, and the testimony of Greenup, Vegors, and J. R. Meany, an accountant, for appellants. Many exhibits, showing the numerous transactions, were filed. The testimony of Hewett was for the most part clear and responsive. This is not true of Greenup's testimony. The Commissioner, in his first report, said: "From this record I find it very difficult to ascertain what amount has actually been expended for legitimate expenses in behalf of this partnership. The testimony of the defendant, A. G. Greenup, who was in charge of the operations, and handling the money, does not throw much light upon this question. He admits having little or no knowledge of how much was so expended, contenting himself with referring to statements made out by accountants. It does appear from the testimony that Mr. Greenup was handling the accounts of A. G. Greenup, individually, another account of Vegors, Greenup and Hewett, another of Greenup and Vegors, another of Vegors and Beacom. * * *"

In an opinion, the Chancellor, after setting out the contract and supplementary agreement, said: "Unquestionably the situation created by these contracts is a joint adventure. * * *"

After quoting from 15 R. C. L., page 501, he continues:

"* * * an obligation was placed upon the plaintiff,

Clyde Hewett, to furnish $148,000 for the purpose solely of acquiring leases for the exploration for oil, drilling and equipping wells. It was the duty of * * * A. G. Greenup and Stanley H. Vegors to procure the leases and pay for them out of the fund provided by their joint adventurer, Clyde Hewett, and to make an accurate accounting to him of the funds disbursed. * * *

"Manifestly, it would be an unjust and unfair interpretation of the contract to say that no duties or expenses were imposed upon the custodians of this small fortune. * * * The record shows their bookkeeping was bad, * * * in the parlance of the streets this whole record looks like they took Clyde Hewett for a big ride.

"* * * The evidence of both adventurers, A. G. Greenup and Stanley H. Vegors is unsatisfactory * * *. The burden of proof is on them to show the proper expenditure of each item for which they claim credit, * * *." After discussing the report of the Commissioner, the Chancellor continues: "* * * The records of the defendants are in interminable confusion as they tried to operate four different and distinct accounts in two banks in the name of A. G. Greenup and all the common funds of four distinct operations were mingled together. No qualified person had charge of the expenditures and no qualified person kept the records.. The system of the defendants is deceptive and capable of having the affairs of the four operations successfully juggled to suit the interest of the defendants. It is in proof that the code letters which were supposed to distinguish the accounts were not written on the checks and much of the evidence is simply guess-work. The defendants undertook the task of expending a big sum of money with a fiduciary relation fastened upon them by law and under the strict rules of good faith and honest dealing toward the creator of the trust. The court has gone over all this record many times and it will take a Philadelphia lawyer to spell out of it an intelligent conclusion. The doubts are all in favor of the plaintiff and the burden is on the defendants to show that they kept the trust. * * *"

In his petition, appellee refers to the relationship of the parties as a partnership. The Chancellor, and the parties in their briefs, refer to the relationship as a joint adventure. "It is sometimes difficult, and often unnecessary, to distinguish in particular cases between

joint adventures and partnerships, * * *." 30 Am. Jur., p. 697. "The relationship between joint adventurers, like that existing between partners, is fiduciary in character, and imposes upon all the participants the obligation of loyalty to the joint concern and of the utmost good faith, fairness, and honesty in their dealings with each other with respect to matters pertaining to the enterprise. * * *" 30 Am. Jur., p. 695. See, 48 C. J. S., Joint Adventures, sec. 5; Jones v. Nickell, 297 Ky. 81, 179 S. W. 2d 195.

In his original report the Commissioner concluded that Hewett was entitled to recover of appellants $52,-696.87. In his supplemental report he made a large number of reductions. The Chancellor, in his opinion, referred to numerous errors in the Commissioner's reports. We have found errors in calculation throughout this record, including the report of the Commissioner and the opinion of the Chancellor. This record has been checked and rechecked by us carefully. We find that appellee is entitled to recover from appellants as much, if not more than, the amount allowed by the Chancellor. There is no cross-appeal.

The judgment of the Chancellor is affirmed.