**Theodore LAPPAS et al., Appellants,**

**v.**

**Milton BARKER et al., Appellees.**

Court of Appeals of Kentucky.

Sept. 20, 1963.

Rehearing Denied Feb. 28, 1964.

Charles W. Dobbins, Woolsey M. Caye, Louisville, Tilford & Dobbins, Louisville, of counsel, for appellant.

Paul R. Huddleston, Bowling Green, Davis Williams, Munfordville, for appellees.

CLAY, Commissioner.

· This suit was instituted primarily for the purpose of selling an oil and gas leasehold to satisfy a $50,000 note executed by the principal appellant Lappas. Upon the assertion of other claims in the suit, an accounting was had. Appellants took the position that the whole transaction out of which this $50,000 note arose was fraudulent, and they sought to cancel the note, rescind various leases and recover for certain expenditures. The Chancellor found against them on all phases of the controversy.

Lappas, who may be described as a capitalist from New Jersey, had worked with appellees Smith and Craighead in the acquisition and operation of oil and gas leases in Kentucky. While they were not partners, they had entered into several joint enterprises, with Smith and Craighead at-

tending to the production end of the business.

In April 1959 Smith called Lappas and advised of the discovery of an attractive lease in Green County, designated the "Jr. Ennis Lease". Lappas was advised that Smith and Craighead had investigated the production and were willing to invest $50,-000 of their own money in the purchase of this lease. When Lappas came to Kentucky, Smith and Craighead showed Lappas a production slip which indicated the lease was producing 8,200 barrels of oil per month. (This truly represented the production for the preceding month of March.) A "stick test" was also made on the ground which indicated substantial daily production.

On April 28, 1959 the transaction was closed by the appellee owners assigning various interests to the appellants, and a one-fourth interest was assigned to Smith and Craighead. At the time of the closing the sale price was fixed at $200,000. Smith and Craighead each gave their checks for $25,000 to the owners, and in addition to $100,000 in cash paid by appellants, Lappas executed the $50,000 note. Thereafter additional wells were drilled but production rapidly fell off and the lease did not turn out to be the profitable venture originally anticipated.

Shortly after the closing of this transaction the owners returned to Smith and Craighead their $25,000 checks and it was subsequently learned by appellants that these two men had a secret agreement with the owners. This agreement was that Smith and Craighead would be entitled to anything they could get above $150,000.

■ Appellants contend the whole transaction was fraudulent. The first argument is that Smith and Craighead, with the acquiescence of the owners, misrepresented the production on the leasehold. There is ample support in the record for the trial court's findings that there was no material misrepresentation in this respect upon which appellants had the right to rely. Perhaps Smith and Craighead did not make sufficient investigation but they did not misrepresent the information they had obtained. In any event, the *owners* made no representation about production and they committed no fraud in this respect which would justify rescission of the transaction or cancellation of the $50,000 note.

The next contention is that the owners, acting jointly with Smith and Craighead, fraudulently conspired to make it appear that the actual sale price was $200,000 and that the latter two were investing $50,000 of their own money in this lease, which was not true; that appellants relied upon these facts as a material inducement to their entering into the transaction; that because of the relationship of appellants with Smith and Craighead and the latter's representations, they could reasonably rely on the integrity of the transaction; and they were defrauded into making a bad deal.

■ It is clear from the record that when this transaction was closed, one phase of it was completely fictitious and known by the owners and Smith and Craighead to be fictitious. Ostensibly Smith and Craighead were investing $50,000 of their own money in this lease. They and the owners knew this was false, and appellant Lappas had ample reason to believe it was true. The finding of the court that Smith and Craighead did not misrepresent the nature of their interest has no support in this record and is clearly erroneous. If he relied on this feature of the transaction to his detriment, he was defrauded.

■ It is contended that there is no evidence Lappas (or the persons he represented) relied upon Smith's and Craighead's apparently bona fide investment in this leasehold. While it is true the record fails to disclose a specific statement by Lappas concerning such reliance, the chain of circumstances, the nature of the representations made by Smith and Craighead,

and the necessary inferences to be drawn from Lappas' testimony make it clear the nature of Smith's and Craighead's apparent financial interest in this lease ($50,000) constituted a material inducement to Lappas to enter into it. In addition, the method by which the closing of this transaction was engineered by the owners with Smith and Craighead establishes that this totally unnecessary and fictitious maneuver was for a single purpose, and that was to induce Lappas (and those he represented) to become a party to it. The conclusion is inescapable that he did rely on Smith's and Craighead's ostensible financial interest as an inducement.

■ It is further contended by appellees that Lappas had no right to rely upon the misrepresentations of Smith and Craighead because they were acting as brokers for the owners and no fiduciary relationship existed between them and Lappas. The court found as a fact that no partnership or join adventure existed between Lappas and Smith and Craighead and that the latter were acting "as brokers for the sellers". The finding that no partnership existed is a correct one. The other two findings are clearly erroneous.

■ Smith, Craighead and Lappas were engaged in a joint adventure to purchase this leasehold. This term is simply descriptive and has been defined as "an enterprise undertaken by several persons jointly". Wyoming-Indiana Oil & Gas Co. v. Weston, 43 Wyo. 526, 7 P.2d 206, 208, 80 A. L.R. 1037. It exists when persons embark upon a common enterprise for their mutual benefit. Hey v. Duncan, CCA Ill., 13 F. 2d 794. It is ordinarily an association for a particular transaction. Jones v. Nickell, 297 Ky. 81, 179 S.W.2d 195. An agreement to purchase specific property for speculation or resale at profit is a "joint adventure". Drew v. Hobbs, 104 Fla. 427, 140 So. 211.

■ The significant feature of this transaction was that Smith and Craighead ad- mittedly induced Lappas to jointly purchase *with them* this leasehold for their mutual benefit and prospective profit. For Smith and Craighead to assert that they were acting as brokers for the sellers in this transaction cannot stand the light of serious consideration. They could not at the same time act in the capacity of *brokers* for the sellers and *buyers* for their own benefit. Clearly they engaged in this adventure as joint purchasers with Lappas.

■ This joint enterprise created a fiduciary relationship between the parties. Such relationship exists when the parties are "under a duty to act for or give advice for the benefit of another upon matters within the scope of the relation". Restatement, Torts, Section 874. It exists where a special confidence is reposed in another who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence. Klika v. Albert Wenzlick Real Estate Co., Mo.App., 150 S.W.2d 18. As a general rule joint purchasers of property owe fiduciary obligations to one another. Jones v. Nickell, 297 Ky. 81, 179 S.W.2d 195; Ozark Motor Co. v. Horton, Mo. App., 196 S.W. 395; Fink v. Weisman, 129 Cal.App. 305, 18 P.2d 961; Lowe v. Hendrick, 86 Conn. 481, 85 A. 795; Allen v. Barhoff, 90 Conn. 183, 96 A. 928, 929.

It is crystal clear from this record that appellants were induced to enter into this transaction as joint purchasers with Smith and Craighead for their mutual interests as they had done in the past. All of the activities of Smith and Craighead were ostensibly for their mutual benefit. There was nothing to indicate to Lappas that they were working the other side of the street. Under these facts equity demanded that Smith and Craighead act in good faith. They could not for their own benefit take advantage of their relationship to the detriment of the other party in this enterprise. Appellants had a right to rely on the representations of Smith and Craighead and the fairness of the transaction into which

they jointly entered. All of the elements of fraud with respect to this phase of the transaction were conclusively established.

The final problem is the nature of the relief to which appellants are entitled. Their request for rescission of the entire transaction cannot be honored for several reasons. Because of the subsequent operations on this leasehold, the parties could not be placed in status quo ante. Because of the expenditure of substantial sums of money by appellants and other transactions involving the leasehold, it would be practically impossible to achieve a fair accounting upon rescission. In addition, the equities of the case do not justify imposing the entire loss arising out of this business enterprise upon appellees. On the other hand, the fraud in this case related principally to the actual sale price of the leasehold, and the equitable rights of both parties can be adequately secured by a pro rata adjustment of appellants' investment in it.

The measureable injury suffered by appellants was that they were induced by fraud to pay an excessive amount for their three-fourths interest in this lease. Had the sale price truly been $200,000, their proper contribution would have been what they agreed to pay, to wit, $150,000. Since the owners were actually selling the entire leasehold for $150,000, their fair share would be three-fourths of this figure.

Where a joint purchaser of property is induced to pay more than the actual purchase price as a result of misrepresentation, he may recover the excess above what he should have paid as his proper pro rata share of such purchase price. Jones v. Nickell, 297 Ky. 81, 179 S.W.2d 195; Lowe v. Hendrick, 86 Conn. 481, 85 A. 795; Allen v. Barhoff, 90 Conn. 183, 96 A. 928.

The same principle has been applied in the reverse situation where a *seller* was fraudulently induced by a co-owner of property to sell the property at a lower price than the purchaser was willing to pay, when one of the co-owners made a secret profit on the sale. (In that case rescission of the contract was decreed.) Powell v. Keene, 205 Ky. 846, 266 S.W. 659.

In the first three cases cited above the joint purchaser was allowed recovery from his co-purchaser who made the secret profit, which in this case would be Smith and Craighead. The same claim however may properly be asserted against the appellee owners (or sellers). A person who knowingly aids and abets a fiduciary to make a secret profit is jointly liable with such fiduciary. Fink v. Weisman, 129 Cal. App. 305, 18 P.2d 961; Jackson v. Smith, 254 U.S. 586, 41 S.Ct. 200, 65 L.Ed. 418; Ozark Motor Co. v. Horton, Mo.App., 196 S.W. 395. It simply cannot be disputed that appellee owners actively and affirmatively aided and abetted Smith and Craighead to perpetuate the fraud upon appellants with respect to the selling price. The ostensible acceptance and secret return of the two $25,000 checks *by them* lay at the very heart of it. Therefore they are liable for the loss suffered by appellants.

The practical and equitable solution of this controversy may be achieved by a modification of the judgment. Appellee owners are not entitled to recover the $50,000 due on Lappas' note which was given as a part of the $150,000 payment on the $200,000 lease. Since we have determined that appellants were buying a three-fourths interest in a $150,000 lease, the balance still owing must be reduced proportionately. On the basis of a $150,000 purchase price, the cost of a three-fourths interest is $112,500. Appellants have paid $100,000. The balance due is $12,500. Therefore Lappas shall be allowed a $37,500 credit on the $50,000 note. In all other respects the judgment is proper.

The judgment is affirmed in part and reversed in part, with directions to modify the judgment consistent with this opinion.