RENDERED: FEBRUARY 28, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1473-MR

BOUG, LLC                                                                APPELLANT


                    APPEAL FROM PULASKI CIRCUIT COURT
v.                  HONORABLE TERESA WHITAKER, JUDGE
                    ACTION NO. 21-CI-00718


SHENANDOAH HOLDINGS, LLC
AND A.D. VENTURES, LLC                                      APPELLEES

AND

NO. 2024-CA-0285-MR

BOUG, LLC                                                                APPELLANT


                    APPEAL FROM PULASKI CIRCUIT COURT
v.                  HONORABLE TERESA WHITAKER, JUDGE
                    ACTION NO. 21-CI-00718


SHENANDOAH HOLDINGS, LLC
AND A.D. VENTURES, LLC                                      APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, ECKERLE, AND KAREM, JUDGES.

EASTON, JUDGE: These two appeals stem from an action to sell[1] jointly owned property. The property was sold by judicial sale. By Counterclaim and Crossclaim, one of the property owners claimed a breach of fiduciary duty by her co-owners, her brother and sister. The circuit court dismissed these claims by summary judgment and distributed the proceeds denying any stay by the posting of a supersedeas bond. The summary judgment (No. 2023-CA-1473-MR) and the refusal of a supersedeas bond (No. 2024-CA-0285-MR) are the subject of these appeals. We affirm.

**FACTUAL AND PROCEDURAL HISTORY**

Dr. James Crase practiced medicine for many years. Toward the end of his career, his office was in the Somerset Medical Center (the "SMC Building"), a commercial building where he and other doctors practiced. An opportunity arose to purchase this building, and Dr. Crase wanted to buy it in such a way as to eventually have the title held jointly by a trust in which he and his wife had an

---

[1] Kentucky Revised Statutes ("KRS") 389A.030. Because the property involved was a commercial building and lot, no one claimed that the property could be physically partitioned without substantial reduction in its value.

-2-

interest and also in the name of his three children: Katherine or "Kit," Karl, and Kim. This was accomplished through a series of transactions.

For this purpose, the children set up Limited Liability Companies or "LLCs." Each child had a separate, essentially one-asset LLC, owned solely by the respective child. Kit owns BOUG, LLC. Kim owns Shenandoah Holdings, LLC, and Karl owns A.D. Ventures, LLC. We will use the first names of the children in our discussion of this case, as this will make the discussion easier to follow and because the actions complained of are really those of individuals rather than their LLCs, although we recognize the separate legal nature of the LLCs.

Dr. Crase's wife, Janice Y. Crase, died first followed by Dr. Crase. As a result, the three children's LLCs became tenants in common with three equal shares to the property. The children first attempted to lease the SMC Building to commercial tenants. The local rental market changed, and tenants were hard to procure to the point that the SMC Building would become essentially vacant. The children decided to look into selling the SMC Building. Of course, as tenants in common, they would divide the proceeds of any private sale evenly.

The children were not successful in reaching any final agreement to sell the SMC Building. Kim no longer wanted to be a part owner of the SMC Building. She filed the action for sale in circuit court naming her siblings' LLCs as necessary parties. Kit filed a Counterclaim and Crossclaim against her siblings'

LLCs claiming breach of a fiduciary duty arising from their joint tenancy and specifically based on a refusal to proceed with a prior private offer to buy the SMC Building.

Kim initially moved to dismiss Kit's Counterclaim under CR[2] 12.02. The circuit court denied Kim's motion to dismiss, and the parties proceeded with discovery. Pursuant to the circuit court's Summary Judgment and Order of Sale entered in September 2022, the SMC Building was ordered to be sold by the Master Commissioner. The SMC Building was sold by the Master Commissioner in February 2023, and the $700,000 sale proceeds were held in the Master Commissioner's escrow account.

Kim filed a Motion for Summary Judgment on Kit's Counterclaim. Kit responded claiming an issue of material fact existed as to whether Kim and Karl secretly collaborated to attempt to exclude Kit from a profitable transaction involving the SMC Building. Kit also felt that her siblings should have proceeded with a contingent offer Kit had procured.

Kit filed an Affidavit of Ken Ford ("Ford"), who is a local real estate agent. Ford stated that Kit had obtained an offer from investors interested in purchasing the property in the amount of $2,000,000. Kit believes Kim's rejection of this offer was evidence of the alleged conspiracy between Kim and Karl.

---

[2] Kentucky Rules of Civil Procedure.

The circuit court issued its Summary Judgment Dismissing Kit's Counterclaim in May 2023. The circuit court held that Kit failed to identify "affirmative evidence in the record of the formation of a fiduciary relationship between" Kit and Kim obligating Kim to act for Kit's benefit. In December 2023, the circuit court entered its Summary Judgment Dismissing Kit's Crossclaim against Karl for the same reasons. The circuit court denied Kit's Motion for Reconsideration of the prior summary judgment in favor of Kim at the same time. Kit filed her timely Notice of Appeal of these summary judgment decisions.

Also in late 2023, Kim and Karl moved the circuit court to enter a final order and distribute the funds held by the Master Commissioner. In response, Kit filed a Motion to Stay Distribution and Notice of Intent to Give Supersedeas Bond. Kit objected to the disbursement of the proceeds from the sale of the SMC Building. She wanted the proceeds belonging to her siblings held to make sure that funds would be available to pay damages if she were to be ultimately successful on her breach of fiduciary duty claims. At that point, the circuit court still had to determine the exact amount held by the Master Commissioner as well as a claim for attorney's fees and costs of the sale. The circuit court found Kit's motion to be premature and declined to rule on it at that time.

In a February 6, 2024, Amended Order of Distribution, the circuit court ordered distribution of the sale proceeds and calculated the final allocation of

funds to the parties in the following shares: $257,084.68 to Kim; $219,923.33 to Kit; and $219,923.33 to Karl. The difference in the amounts is due to a permissible award of attorney's fees and costs, which is not an issue on appeal. This Order was made "final, appealable, and subject to any post-judgment motions filed by the parties to the above action." But the Order also stated: "Any party who has an objection to this Order may file an exception with the Court (and send a copy of the objection to the Pulaski County Master Commissioner) within ten (10) days of the entry of this Order. Absent a timely filed post-judgment motion or objection, the Master Commissioner shall distribute the funds accordingly."

On February 12, Kit submitted a Notice of Filing of Bond, attaching a completed AOC[3]-155 form application for a supersedeas bond, as well as a surety bond in the amount of $34,509.19. On February 13, Kit filed a Motion to Stay Distribution, Approval of Bond, and Exceptions to the [Circuit] Court's Amended Order requesting the circuit court to approve the supersedeas bond and to approve a stay of the distribution of the funds under RAP[4] 63. Kim and Karl argued in part that Kit could not request a stay under RAP 63 because an actual Notice of Appeal regarding the circuit court's Amended Order of Distribution had not been filed.

---

[3] Kentucky Administrative Office of the Courts.

[4] Kentucky Rules of Appellate Procedure.

On March 1, the circuit court held a hearing on Kit's proffered supersedeas bond and motion to stay the distribution of funds. At this hearing, Kit explained she objected to the distribution of the funds to Kim and Karl due to her pending first appeal of the circuit court's dismissal of the breach of fiduciary duty claims. The circuit court recalled prior discussion of the issues and held that Kit's proffered bond would not be accepted. The circuit court denied Kit's motion to stay the distribution. The circuit clerk immediately[5] entered the order. After the bench ruling, counsel for Kit stated that he was prepared to file a Notice of Appeal and re-tender the supersedeas bond that day. The circuit court noted that Kit's application for a supersedeas bond had already been tendered and rejected.

That same day, the circuit court entered its Order Overruling and Denying Motion for Stay and Order Directing Immediate Payment of Funds and an Addendum explaining the court's rulings. The circuit court denied Kit's motion to stay "enforcement of the provisions of February 6, 2024 [Amended Order of Distribution] requiring payments of the proceeds from the sale of the property[.]" The circuit court stated that, because Kit had not appealed from the Amended

_____

[5] Kit insinuates impropriety by the clerk, the other attorneys, and even the judge in making sure the distribution order took effect before a notice of appeal could be filed. The circuit clerk was already in the room, which is not uncommon to facilitate entry of orders, and, as we will explain, the circuit court was correct in the decision to distribute the funds immediately.

Order of Distribution as of March 1, 2024, she could not post a supersedeas bond to stay enforcement of said Order.

The circuit court thus denied the supersedeas bond and directed the Pulaski Circuit Clerk to decline Kit's proposed supersedeas bond as insufficient under RAP 63(A)(1). The circuit court also ruled Kit's exceptions were insufficient to withhold the disbursement of the sale proceeds. The court reasoned there was no legal basis to withhold payment of the proceeds held by the Master Commissioner, and thus it ordered the Master Commissioner to immediately disburse the proceeds according to the Amended Order of Distribution.

Later, still on March 1, Kit filed her Notice of Appeal of the Amended Order of Distribution. Kit then filed an Amended Notice of Appeal appealing the March 1 Orders denying the motion to stay. Kit re-tendered her supersedeas bond on March 4. The circuit court denied the bond on March 6. Kit did not appeal the March 6 decision. The funds were disbursed.

The first appeal presents an opportunity to apply the legal principles which distinguish between a joint venture and a joint tenancy with further application of the fiduciary duties which may arise in such relationships. The second appeal presents questions of procedure and substance on the rarely discussed area of the law pertaining to supersedeas bonds.

## BREACH OF FIDUCIARY DUTY SUMMARY JUDGMENT
## (APPEAL NO. 2023-CA-1473-MR)

### STANDARD OF REVIEW

"The standard of review of a trial court's granting of summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. Summary judgment is proper when it appears that it would be impossible for the adverse party to produce evidence at trial warranting a judgment in its favor." *Andrew v. Begley*, 203 S.W.3d 165, 169 (Ky. App. 2006) (citations omitted). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo.*" *Jenkins v. Best*, 250 S.W.3d 680, 688 (Ky. App. 2007).

Because review of summary judgment, including the existence of any genuine issue of material fact when the correct law is applied, is *de novo,* we may affirm the circuit court for reasons other than those relied upon by the circuit court. "[W]e, as an appellate court, may affirm the trial court for any reason sustainable by the record." *Kentucky Farm Bureau Mut. Ins. Co. v. Gray*, 814 S.W.2d 928, 930 (Ky. App. 1991). There may be cases in which we choose to remand to the circuit court for further evaluation of the circumstances in deciding summary judgment, but that is not required here.

As we will explain, we do not agree with the circuit court's finding of no fiduciary duty. We further recognize that whether a breach of a fiduciary duty has occurred and whether damages have been sustained are normally factual inquiries, but we still find no genuine issue of material fact when the correct law is applied to this case. In doing so, we do not engage in factfinding; we simply apply the legal standard for a summary judgment to be upheld.

There is no genuine issue of material fact in this case. As a result, the circuit court did not err in granting summary judgment, even though we disagree with its legal reasoning. Judicial economy is served by this Court affirming the circuit court in this case. This will save all parties unnecessary delay, expense, and inconvenience resulting from a reevaluation of the same record by the circuit court.

## ANALYSIS

We start with fiduciary duty. For a breach of fiduciary duty claim, the plaintiff must prove (1) the existence of a fiduciary duty; (2) the breach of that duty; (3) injury; and (4) causation. *Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*, 436 S.W.3d 189, 193 (Ky. 2013), *as modified* (Feb. 20, 2014).

Kit stated in her pleadings, which she never amended,[6] only that the joint tenancy created a fiduciary duty. Her argument shifted to a claim that the siblings were involved in a joint venture which may separately create a fiduciary duty similar to partnership. Both relationships have a component of fiduciary duty, but this duty is measured by the nature and extent of the relationship itself. As we will explain, these siblings were joint tenants. They were not involved in a joint venture when the unsuccessful sale efforts were being made.

The elements of a joint venture are: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *Huff v. Rosenberg*, 496 S.W.2d 352, 355 (Ky. 1973).

We may use three cases upon which Kit relies to explain why this case does not involve a dispute over a joint venture. In *Lappas v. Barker*, 375 S.W.2d 248 (Ky. 1963), Smith and Craighead called Lappas and convinced him to

---

[6] We are well aware of the Kentucky policy of notice pleadings. Kit claimed a breach of fiduciary duty even if she based that only on a joint tenancy. Because we are called upon to distinguish joint venture and joint tenancy in the circumstances of this case, we decline to address whether the rules of pleading called for Kit to specify the existence of a joint venture, which is separate from joint tenancy. We note only that better practice certainly would be to give notice of the joint venture allegation. 46 AM. JUR. 2D, *Joint Ventures* §69 (2d ed. Jan. 2025 update).

put up $150,000 toward the purchase of an oil and gas lease with the total price of $200,000. This was paid by $100,000 cash and a note from Lappas for $50,000. Smith and Craighead were to pay $25,000 each for a total share of 25%. *Id*. at 250. But there was a secret side agreement. After the formal closing on the joint venture purchase, the property owner returned Smith's and Craighead's payments. *Id.* This side agreement gave Smith and Craighead all profits exceeding $150,000. *Id.*

Our former Court of Appeals determined that the parties were engaged in a joint venture as there was evidence of an agreement to purchase specific property for speculation or resale at profit. *Id.* at 251. The Court held that the joint enterprise created a fiduciary relationship between the parties. *Id.* "As a general rule joint purchasers of property own [sic] fiduciary obligations to one another." *Id.*

Kit also relies upon *Eubank v. Richardson*, 353 S.W.2d 367 (Ky. 1962). In *Eubank*, the plaintiff Richardson alleged that he, the defendant Eubank, and a third-party met at a restaurant and agreed to purchase coal land that would be titled in Eubank's name only, although Richardson would have a right to a share in the proceeds. On appeal, the Court held that the evidence at trial was sufficient to prove that, despite the title being recorded in Eubank's name alone, a joint venture

to purchase the property was formed and entitled Richardson to royalties.  *Id.* at 369.

"A joint adventure is an *informal* association of two or more persons, partaking of the nature of a partnership, usually, but not always, limited to a single transaction . . . ."  *Id*. (emphasis added).  "A joint adventure has been held distinguishable from joint ownership and tenancy in common, in that the latter lacks the feature of adventure."  *Id.*

Finally, in *Jones v. Nickell*, 179 S.W.2d 195 (Ky. 1944), the Court addressed another verbal agreement, this time involving the purchase of a commercial building.  *Id*.  The Court there again commented on the nature of a joint venture:  "Ordinarily it is an association for a particular transaction . . . ."  *Id*. at 83.  The Court ultimately did not decide if a joint venture or a partnership had been formed because the fiduciary duties owed were the same.  *Id*.

Kit's argument overlooks the *informal* element of joint venture.  All three of the discussed cases upon which she relies involved verbal agreements.  In each case, the application of joint venture enabled the agreement to be enforced despite the requirement of any Statute of Frauds for a written agreement pertaining to the purchase of real property.  In each case, a joint venturer had an established, secret, side agreement for a benefit which was to the detriment of the other

venturers, and the law required that the terms of the informal agreement be enforced to achieve the end result of the adventure.

As it turns out, there was a *prior* joint venture in which these siblings were involved. They with their father informally agreed to purchase the SMC Building and then become tenants in common through later formal transfers. But that venture was completed without any secret side agreements to the detriment of the equal rights of the joint venturers. The completed venture resulted in a formal arrangement with written property transfers resulting in tenants in common.

Had Kit offered evidence that there was some secret side agreement relating to the original transaction that gave her siblings greater rights in or benefits flowing from the jointly held property, she could then have claimed a breach of fiduciary duty in that prior, completed joint venture. There being no evidence of any breach of the fiduciary duty arising from that prior, completed joint venture, we must then look at what tenants in common owe to one another.

"The tenancy in common is now the most common form of concurrent ownership." *Herbener v. Herbener*, 587 S.W.3d 343, 353 (Ky. App. 2019). Each of these siblings own a one-third share in an undivided property. Any one of them may sell or place liens on his or her share. Each has an equal right to use the property and to share in any income from the property. *Id.* Absent a

unanimous agreement to sell the property, the only way to sell the property was through a judicial action, as in this case.

The circuit court concluded that Kim and Karl had not assumed a fiduciary duty to Kit. The circuit court was correct on this point. The law recognizes that a fiduciary duty may be found to exist in certain circumstances.[7] But joint tenants have fiduciary duties to each other. Importantly, "the fiduciary duties of joint tenants or tenants in common are coextensive with the cotenancy." *Givens v. Givens*, 387 S.W.2d 851, 853 (Ky. 1965) (footnote omitted). When joint tenants decide to sell the property, they also cannot enter into secret side agreements to the detriment of their cotenants. *Howell v. Bach*, 580 S.W.2d 711, 712-13 (Ky. App. 1978). Kit insists that at least one of her cotenants attempted to do this.

All three of the owners had every right to look for and develop sale options for this property. Again, absent court action, the property would not be sold unless all agreed. Before agreement, each sibling could have insisted on full disclosure. Kit believed Karl was engaging in separate negotiations which would

---

[7] We need not comment at length on the general proposition that a fiduciary duty may be found in other circumstances, because one exists in these particular circumstances of joint tenancy. A fiduciary duty in other circumstances "necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 485 (Ky. 1991). Kit could produce no evidence that her siblings affirmatively undertook any obligation to act *primarily* for her benefit.

diminish Kit's rightful share. But, *if* Karl was trying to do so, no such agreement was ever finalized. The property was not sold privately, with or without any secret side agreements.

Even so, Kit insists the "feelers" and negotiations engaged in by her cotenant siblings caused a loss of an offer beneficial to all. We note then with some irony that Kit's argument is based on the refusal of her siblings to proceed with an "offer" she had procured. We quote from the Ford Affidavit at paragraph 6:

> In early December 2020, I informed Kit that I did have an investment group interested in purchasing the property, that would be a cash buyer and would probably close by the end of the year to meet certain IRC Section 1031 deadlines and save tax advantages. The contingencies in bringing the offer would be obtaining a contingent lease from the neighboring hospital, which I would help negotiate with the permission of the current owners, and an agreement that if I brought in an offer for $2 million or over, all of the owners of the property would sell.

This "offer" is riddled with uncertainty and contingencies. The cotenants had no obligation to trust Kit and commit themselves to this possibility, just as Kit had no obligation to trust her siblings and commit to some possible deal her siblings were trying to procure.

The circuit court correctly granted summary judgment even though the circuit court erroneously concluded that there was no fiduciary duty to be applied.

While there was a fiduciary duty to apply, Kit did not create any genuine issue of any material fact of any actual breach of this fiduciary duty which is limited to the extent of the cotenancy, and her argument on damages was based on rank speculation about an offer full of "ifs."

Ultimately, Kim properly exercised her right as a cotenant to demand a judicial sale of this property. That sale was properly performed. The joint owners had an equal interest in making sure interested buyers, including those involved in previous "feelers" and negotiations, came to that sale to bid. Each joint owner received his or her proper share of the proceeds from the judicial sale.

## SUPERSEDEAS BOND
## (APPEAL NO. 2024-CA-0285-MR)

### STANDARD OF REVIEW

Appellate courts review trial courts' decisions on supersedeas bonds for abuse of discretion. *Strunk v. Lawson*, 447 S.W.3d 641, 651 (Ky. App. 2013) (citation omitted). "The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound reasonable principles." *Penner v. Penner*, 411 S.W.3d 775, 779-80 (Ky. App. 2013). Appellate review of a trial court's factual findings, if any, is governed by the clearly erroneous standard; factual determinations supported by substantial evidence will not be disturbed. *Truman v. Lillard*, 404 S.W.3d 863, 868 (Ky. App. 2012). In evaluating abuse of discretion, this Court reviews legal conclusions

-17-

applied by the trial court *de novo*.  *Ehret v. Ehret*, 601 S.W.3d 508, 511 (Ky. App. 2020).

## ANALYSIS

Kit argues the circuit court abused its discretion when it denied a supersedeas bond and ordered immediate distribution of the proceeds from the master commissioner sale.  RAP 63 (derived from the previous CR 73) allows a litigant to proffer a supersedeas bond to stay the enforcement of a judgment while the matter is on appeal.  *See also Strunk*, *supra*, at 651 ("When a party loses in the lower court, files a notice of appeal, and then asks the court to stay the proceeding pending appeal, the prevailing party may move the trial court to require posting of a supersedeas bond.").

RAP 63(A)(1) now states:

> When an appeal is taken *from a judgment* other than one granting injunctive relief, the appellant may stay enforcement of the judgment by giving a supersedeas bond.  The bond may be given *at or after* the time for filing the notice of appeal.  *The stay is effective when* the supersedeas bond is *approved* by the court or the clerk, and the clerk shall give prompt notice of such approval to the party or parties *in whose favor the judgment was rendered*.

(Emphasis added.)

The mere proffer of a bond does not automatically stay enforcement of a decision.  The trial court must determine whether the proffered bond is

-18-

sufficient and either approve or disapprove on that basis. *Coomer v. Gray*, 750

S.W.2d 424, 426 (Ky. 1988). RAP 63(C)(1) states: "The sufficiency of the bond

or the surety may be determined by the trial court upon motion and hearing."

RAP 63(B)(1) sets out the following requirements for the sufficiency

of a proffered supersedeas bond:

> The bond shall be in a fixed amount and conditioned for
> the satisfaction of the judgment in full together with
> costs, interest, and damages for delay, if the appeal is
> dismissed or if the judgment is affirmed, and to satisfy in
> full such modification of the judgment and such costs,
> including costs on the appeal and interest as the appellate
> court may adjudge.

RAP 63(B)(3) specifically addresses cases involving real property. In

such cases, a supersedeas bond "shall be fixed at such sum only as will secure the

amount recovered for the use and detention of the property . . . ." *Id.* We will

return to this limitation as we address the specific circumstances of a sale of jointly

held property as compared with a foreclosure or other disposition of property.

Kit complains about how the circuit court had previously found a

procedural fault (Notice of Appeal not yet filed) with the bond offered and then

ordered the immediate disbursement of the proceeds. Indeed, the rule provisions

applicable to supersedeas bonds are designed to work in tandem with other legal

provisions. For example, execution on judgments is generally delayed for ten

days[8] which gives a party time to file a notice of appeal and procure a bond, the sufficiency of which may then be tested by motion.

But the supersedeas process is not designed for what Kit was in fact trying to do. Kit was trying to achieve a prejudgment attachment of property without following the process for such seizures contained in KRS Chapter 425. Such prejudgment seizures are often difficult to justify.

This was not a case in which a monetary judgment was entered in someone's favor. It was a sale of jointly held property. Neither Kit nor either of her siblings was required to pay anything to the others as a result of any judgment entered *against* them. This is not an action to enforce a lien such as a mortgage enforcement action which results in a judgment *against* a party. That may be stayed by supersedeas bond.

To illustrate how a supersedeas bond may be applicable in a sale of jointly held property, we refer to *Lowery v. Madden*, 214 S.W.2d 592 (Ky. 1948). In that case, the buyer of the jointly held property at the judicial sale, who had some objection to the sale process, could have offered to post a supersedeas bond to prevent execution of the judgment requiring him to pay the bid price. He is the only one with a judgment against him requiring payment in such a case. By

---

[8] KRS 426.030.

-20-

contrast, the joint owners simply receive a distribution of funds paid into court, not by execution of a judgment for or against them.

## CONCLUSION

The circuit court did not err when it found no genuine issue of material fact. While Kim and Karl had a fiduciary duty, Kit offered no evidence which could establish a breach of that duty when the property was not sold privately and was instead sold through a proper court process. Separately, no genuine issue of material fact existed as to any provable claim of damages from any alleged breach. Finally, the circuit court did not abuse its discretion in denying the supersedeas bond to stay disbursement of the proceeds from the judicial sale of the SMC Building. The Pulaski Circuit Court is AFFIRMED on both appeals.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Scott P. Zoppoth
Louisville, Kentucky

BRIEF FOR APPELLEE
SHENANDOAH HOLDINGS, LLC:

Virginia L. Lawson
Zachary C. Webster
Lexington, Kentucky

BRIEF FOR APPELLEE A.D.
VENTURES LLC:

Bennett E. Bayer
Lexington, Kentucky